Marcella MONDY, an Infant, by Charles D. Mondy, Her Next Friend, Plaintiff-Appellant,

v.

Gary RASCH, Defendant-Respondent.

No. 33113.

St. Louis Court of Appeals.

Missouri.

Feb. 3, 1969.

Arthur Kreisman, St. Louis, for plaintiff-appellant.

Luke, Cunliff, Wilson, Herr, Chavaux & McCluggage, Paul H. Chavaux, Tom Mendelson, St. Louis, for defendant-respondent.

## OPINION

DOERNER, Commissioner.

Plaintiff obtained a decree of divorce from defendant by default in the Circuit Court of Butler County, Missouri, on August 31, 1965. In that action, quite properly, plaintiff did not request and the court did not make an order respecting the custody of Gary Eugene Rasch, the minor son of the parties, because he was then residing with defendant in Highland, Illinois and the court lacked jurisdiction. Beckmann v. Beckmann, 358 Mo. 1029, 218 S.W. 2d 566, 9 A.L.R.2d 428; Sanders v. Sanders, 223 Mo.App. 834, 14 S.W.2d 458; State ex rel. Warmuth v. Campbell, Mo. App., 431 S.W.2d 683. Thereafter plaintiff obtained physical custody of the child and subsequently by this suit invoked the equitable jurisdiction of the Circuit Court of the City of St. Louis, where she was then domiciled, seeking a decree awarding her legal custody. State ex rel. Stone v. Ferriss, Mo., 369 S.W.2d 244; I___ v. B___, Mo.App., 305 S.W.2d 713; State ex rel. Warmuth v. Campbell, supra. By his cross-claim defendant prayed for the same relief. The court awarded custody to defendant and granted plaintiff visitation rights at reasonable times, and plaintiff appealed.

The only point raised by plaintiff in her brief is that the judgment and decree should have been in her favor. In support of that contention she maintains that, " * * * in custody cases the welfare of the child is the primary consideration. * * *" Of course we thoroughly agree with that rule, for that principle has been consistently followed by our courts since Lusk v. Lusk, 28 Mo. 91, decided in 1859. However, the difficulty encountered in most cases of that nature, including the present one, is not in determining the proper rule to be followed, but rather in applying the rule in the light of the evidence presented. It was undoubtedly in observance of that principle that the court below entered the judgment and decree from which plaintiff appeals, and after carefully reviewing the record de novo it is in compliance with that principle that we affirm the judgment.

Plaintiff, then just turned 16, and defendant, 20 years of age, were married in Highland, Illinois on January 1, 1964. Gary, their son, was born in the City of St. Louis on October 19, 1964. At that time defendant was associated with one Larry Smith in a business involving the sale at auction of used furniture and appliances, and the parties were living with Mr. and Mrs. Smith in a four-room flat or apartment in the 2500 block of Michigan Avenue in St. Louis. The child suffered from a chronic heart condition, was sickly following his birth, and the overwhelming weight of the evidence compels the conclusion that the care and treatment given it by plaintiff were far from satisfactory. The baby was not fed properly, was undernourished, cried a lot, and was not given the attention it required, and frequently smelled of urine and vomit. Suggestions and assistance offered by Mrs. Dorothy Rasch, defendant's stepmother, who lived nearby, regarding its proper feeding and care, were disregarded and its health and general condition did not improve.

In January, 1965, the child was ill and was running a fever of 104. Mrs. Dorothy Rasch's doctor recommended that Gary be hospitalized, and through her arrangements had been made to enter the child in the Cardinal Glennon Hospital the next day. However, despite Gary's condition and knowing that hospitalization had been recommended and arranged for, plaintiff

transported the child to Poplar Bluff in a truck. Defendant, who was temporarily working in Poplar Bluff at the time, arranged for the baby's hospitalization there, where it was found that he had double pneumonia. The only explanation offered by plaintiff as to why she took the child to Poplar Bluff, as best we can gather from her long, rambling response, was that she was dissatisfied with the advice given her at the Cardinal Glennon Hospital, that she went to Poplar Bluff "to see about a doctor" there, and that " * * * I didn't know he was as sick as he was * * * "— this despite the fact that in the same response plaintiff testified Gary had been running a fever of from 101 to 106.

The child remained in the hospital in Poplar Bluff about a week. Thereafter, the parties did not live together. Plaintiff, with Gary, lived with plaintiff's grandmother in Poplar Bluff, and worked as a waitress. Defendant went to reside with his mother in Highland, Illinois, where he obtained employment with a trucking company. The baby remained in plaintiff's custody from January, 1965 to March, 1965, when plaintiff delivered the child to defendant and his mother in Poplar Bluff because, plaintiff maintained, she was financially unable to care for him. Plaintiff conceded that during that period she made no request to defendant for funds, and there was a conflict in the evidence as to how much money, if any, defendant voluntarily sent to plaintiff. We are of the opinion that the amount was relatively small. Defendant's failure to adequately contribute to the support of Gary during that period, as well as his lackadaisical attitude towards his obligation to support plaintiff at least while they lived together, as indicated by his testimony, does not redound to his credit.

Upon receiving custody of the child defendant and his mother brought him home to live with them in Highland. Mrs. Betty Zweck, a registered nurse in whose care Gary was immediately placed, testified that when he was brought to Highland he was suffering from malnutrition, he held his head to one side seemingly because his muscles were not strong enough to hold his head up, his teeth were decayed and not coming through right, his skin was tight, and he was weak and unable to sit up. His weight, as she estimated it, was about 10 pounds. The child was given medical attention, given various shots, and put on a special vitamin diet by the doctor. He remained in the custody of defendant for about 13 months, during which time his weight increased from about 10 to approximately 20 pounds, his height increased 8 inches, he learned to walk by holding onto furniture, and his general health and disposition markedly improved.

According to Charles D. Mondy, plaintiff's present husband, they met in the latter part of January, 1965, the same month in which the parties separated, and began to date the following month. Thereafter, at some unspecified date, plaintiff filed suit for divorce in Butler County, service was obtained on defendant in Highland, Illinois by registered mail, defendant did not appear, and on August 31, 1965, a decree of divorce was granted to plaintiff. She testified that the lawyer who then represented her (not her present counsel) advised her to go to Highland, bring him to Missouri, and then institute her divorce action, in which she could then seek to obtain legal custody, but she did not do so, and as stated, the decree is silent on that subject.

About the latter part of March, 1966 plaintiff asked defendant to let her have Gary for two weeks. Defendant replied that plaintiff could visit the child at any time, but declined to let her have the child for two weeks. On April 12, 1966 plaintiff and her present husband went to the home of defendant's grandmother in Highland, where only defendant's younger brother was at home at the time, and without prior notice to defendant and over the protest of the brother, took Gary and brought him to St. Louis. Plaintiff and her present hus-

band were then living in a three-room furnished flat at 2640A Arsenal Street in that city, as tenants of Mrs. Dorothy Ross and her husband, who resided in the first floor flat. Called as a witness by defendant, Mrs. Ross related that about 3 or 4 weeks after plaintiff obtained custody of Gary, plaintiff returned to her job, and Mrs. Ross was engaged by plaintiff to take care of him during the day. Plaintiff customarily delivered the child to Mrs. Ross at 6:15 A.M., according to Mrs. Ross, and the latter frequently found that the child's diaper would not have been changed and was wet and soiled. An inadequate supply of changes of clothing to last until plaintiff called for the boy at 4:00 P.M., was furnished her by plaintiff, Mrs. Ross stated. She related that she also had occasion to visit the plaintiff's flat, that for the first month there was no bed provided for the child, and that plaintiff told her he slept on a mattress on the floor. Both plaintiff and her husband denied that the child slept on the floor, and both testified that until a baby bed was obtained Gary would sleep in bed with one or the other of them, and the other adult slept on the floor. Mrs. Ross said that when she was in plaintiff's flat the rooms were not kept clean, clothes were all over the floor, unwashed dishes were sitting around, and the mattress on the floor never had a sheet or cover on it. The condition of plaintiff's flat regarding lack of cleanliness became worse, and some of the furniture therein was wrecked, Mrs. Ross related, and because she considered plaintiff and her present husband to have become undesirable tenants notice to move was given them in June 1966. A contributing factor appears to have been profane language used by plaintiff towards Mr. Ross during an argument between them.

Since about December, 1965, throughout her second marriage, plaintiff has worked as an enameler for a St. Louis firm. Her take home pay is $45 or $47 a week, but her employment has been broken by at least two lay-offs. Mr. Mondy, plaintiff's present husband, was employed as a welder at the time of trial, earning from $160 to $170 a week. Plaintiff testified that Mr. Mondy did not ask her to work, that she voluntarily did so because they were behind in their bills, and were in debt for a car, furniture, and other obligations, and that plaintiff insisted on working because without it they would not have any money to buy clothes or other things. Mr. Mondy, when asked on cross-examination whether his income was sufficient to support them without plaintiff working, replied: "It would be rough, I could make it, but it would be rough." At the time of trial, held in April, 1967, plaintiff, Mr. Mondy and Gary occupied a three-room flat or apartment at 3237A South Compton Avenue, and their arrangements were that about 6:30 A.M., Mr. Mondy took the child to a baby sitter, a married woman who also took care of another little boy, on Mondays through Fridays, and plaintiff picks him up about 4:30 P.M. Plaintiff and Mr. Mondy kept him over the weekend. Plaintiff's mother, Mrs. Laura Page, and Mrs. Rose Dry, a fellow employee of plaintiff's, both testified that plaintiff then maintained a clean house, and that plaintiff gave Gary proper care and attention.

At the time the trial was held defendant had not remarried and was still residing with his mother in Highland. Since the parties separated in June, 1965 he has been continuously employed except for a period of 2 or 3 months when he was laid up with arthritis, and presently was working as a repairman for a radio and television company and as a service man for Great Plains Gas. His income, he stated, was between $49 and $50 a week. Defendant, his brother, and his mother, who is employed, live in a comfortable 7-room house. Public and parochial schools are available, and defendant promised, if granted custody of Gary, to properly rear and maintain him and give him religious training. After Mrs. Zweck, the registered nurse, ceased caring for the boy, defendant's grandmother took care of him during the hours of work, and

defendant and his mother the remainder of the time and weekends, and it was indicated that similar arrangements would be made if custody was granted to defendant.

In addition to maintaining that in custody cases the welfare of the child is the primary consideration, plaintiff also asserts that it is well settled that all things being equal the courts generally favor placing a child, especially one of tender years, in the custody of the mother. That principle, however, as this court pointed out in Stanfield v. Stanfield, 435 S.W.2d 690, decided on December 17, 1968, is in large measure premised on the supposition that the mother will remain at home taking care of all of the child's needs and training, and that the father will be at work·earning the livelihood for his dependents. And as we there observed, the reason which supports that rule is seriously impaired if not entirely eradicated where, as here, the mother of her own volition and upon her insistence continues her employment outside of the home. Furthermore, whatever its applicability, the "all things being equal" rule is a mere corollary to the predominant and controlling principle that the primary consideration in a custody case is the future welfare of the child.

The decision as to what is best for the future welfare of Gary is not free from all difficulties. But a careful consideration of the evidence in this case regarding the respective ages and relative maturity of the parties, the apparent lack of proper care and treatment of the child at times while he was in the custody and control of plaintiff, the marked improvement which took place in the boy's health and general well-being while he was in the custody and under the control of defendant for a period of about 13 months, the circumstances and conditions under which the parties presently live and the obvious advantages of those of defendant over those of plaintiff as an environment in which to raise the boy, now over 4 years of age, and the superior ability of the defendant to properly supply all of the various needs of a growing child, lead us to the conclusion, as they undoubtedly did the trial court, that it is to the best interests and welfare of the boy to award defendant his custody, reserving to plaintiff the right to visit him at reasonable times.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.