**Dean HORST, Respondent,**

v.

**Linda Sharon Horst McLAIN, Appellant.**

**No. 25608.**

Kansas City Court of Appeals, Missouri.

April 5, 1971.

Kendrick & Purdy, Dan K. Purdy, Kansas City, for appellant.

Quinn, Peebles & Hickman, Alex Peebles, Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

This is an appeal from an order modifying a decree of divorce.

The parties were married in Biloxi, Mississippi, on November 11, 1961. Of that marriage one child, a daughter, Rebecca,

was born January 29, 1964. The parties separated on or about April 24, 1965. They were living in Kansas City, Missouri, at the time of the separation, having come to Kansas City from Biloxi about November 1, 1964.

On February 21, 1966, the husband, respondent here, filed suit for divorce in which he alleged that appellant left his home approximately nine months previously and refused to come back and live with him, and told him that she desired to be free and not have the responsibility of marriage. This allegation was vigorously denied by appellant who testified: "He came home from work one night and he told me he wanted a divorce and it was the first I had heard anything about it and I was real shocked and I asked him if he was joking and he said, 'No, I am not, I want a divorce and I want you to leave' and I asked him how I was supposed to get back to Mississippi." Later appellant talked on the telephone to her sister who lived in Biloxi and explained the situation she had been placed in. The sister sent a money order for $100 to respondent to pay the traveling expenses of appellant and the baby back to Mississippi.

On April 7, 1966, respondent was granted a decree of divorce from appellant by default. He did not request and the court did not make an order respecting the custody of Rebecca because she was then residing with her mother in Biloxi and the court lacked jurisdiction. Mondy v. Rasch, Mo.App., 437 S.W.2d 698.

Both appellant and respondent remarried. Respondent's present wife was previously married having had a child by that marriage. Appellant and her present husband, Terry McLain, moved from Mississippi to Jennings in St. Louis County, Missouri, in March of 1970, bringing Rebecca with them.

On April 8, 1970, respondent filed a motion to modify the decree of divorce, in which motion he asked the court to grant him full custody of the minor child, Rebecca.

While said motion was pending and on June 22, 1970, respondent, accompanied by his present wife, went to Jennings and abducted Rebecca while she was playing in a neighbor's yard with other children and returned with the child to Independence, Missouri, where he secreted the child, along with his family, at the home of a Mrs. Harrell for a period of about three weeks, during which time he never called appellant to inform her of the whereabouts of the child. On June 24th, two days after he brought Rebecca to Independence he dismissed his motion.

Then, on July 11, 1970, appellant filed her motion to modify the divorce decree setting forth in said motion all that had transpired prior thereto and asking the court to place the custody of the child with her, and further requesting that the court set a reasonable sum for the support of the minor child.

The above motion was heard on July 30, 1970. At the conclusion of the evidence the court awarded the custody of the child to the father, Dean Horst. The mother, Linda McLain, perfected her appeal to this court.

■ In a case of this character the appellate court is not bound by the finding of the trial court on questions of fact, but will review the whole record and decide the case on its merits, keeping in mind the best interests of the child as the dominant and most persuasive fact involved. Wells v. Wells, Mo.App., 117 S.W.2d 700, 705. (Citing cases.)

The husband's mother and his aunt testified that appellant would put three diapers on the child and leave them on all day; that the child had diaper rash and urine burns. Appellant denied that she put on three diapers and left them on all day; she said she changed diapers whenever the child was wet. She said: "A doctor at Columbus Air Force Base, before we left down there, told me Becky had a fungus and not a diaper rash, and not to put plastic pants on her for any reason because it would make her break out in blisters."

The aunt also testified that appellant wasn't a very good housekeeper and that she left dirty dishes in the kitchen sink. The aunt also said that appellant put Coca-cola in the baby's bottle. Appellant was asked: "Is it not true that the bottles consisted mostly of Cokes and not milk. A. No, sir. When she was sick she had asthma bronchitis and the doctor told me to give her diluted Coke. That is when we were up here in Kansas City."

Appellant's present husband testified that he lived at 5538 Helen Avenue in Jennings, Missouri; that he married appellant in Biloxi, Mississippi, and that they had lived together as man and wife continuously from that date; that he was in the military service at the time of the marriage and that he got out of the service on October 27, 1969; that he was a mechanic, steadily employed in St. Louis at a regular pay of $4.00 an hour, and that he lived in a pleasant neighborhood; had a good relationship with the child Rebecca, and that he was desirous of his wife continuing to have the child in their home.

Mrs. Evelyn E. Howe testified that she was a sister of appellant and lived in Indianapolis, Indiana; that she had seen Rebecca on an average of twice a year over the past five years; that she has seen the child three times since her sister moved to St. Louis; that "as far as I could see, and it was a pretty close observation, she (appellant) gave (Rebecca) as good a care as any mother gives a child and sometimes I think she would do things for the child, really— Q. Not necessary? A. Not necessary, yes, a little protective. Q. And to the extent that you were aware, would tell us what the child's health was? A. She is a perfect specimen of health for a six year old child."

Appellant put into evidence two photographs of Rebecca. One taken in July, 1969, the other taken in December, 1969, while Rebecca was attending St. Paul's Kindergarten. These pictures show her to be a beautiful child, well nourished, well dressed, and with a smile upon her face. They bear out the statement of Mrs. Howe that Rebecca "is a perfect specimen of health." These pictures speak more convincingly than the assertions of interested witnesses. Many decisions hold that very young children and *particularly girls* should be in the custody of their mother unless she is demonstratedly unfit to assume their proper care. Some of the decisions are set forth in the case of Zimmerman v. Zimmerman, Mo.App., 446 S.W.2d 503, 505.

At times our courts have been quite eloquent in picturing a mother's love for her child. An illustration of this appears in the case of Ellis v. Johnson, 218 Mo. App. 272, 260 S.W. 1010, 1012, as follows:

"The child is of tender years, being but eight years of age, and it is well known by all men, no other love is quite so tender, no other solicitude quite so deep, no other devotion quite so enduring as that of a mother. Generally, the love, solicitude and devotion of a mother cannot be replaced by another and is worth more to a child of tender years than all other things combined and it should not be deprived of the necessary and wholesome influences which spring from these characteristics of a mother if it can reasonably be avoided."

And in the case of Sanders v. Sanders, 223 Mo.App. 834, 14 S.W.2d 458, 463, this language appears: "None can take the place of a mother."

Again in the case of Tuter v. Tuter, Mo. App., 120 S.W.2d 203, 205, it is said: "There is but a twilight zone between a mother's love and the atmosphere of heaven, and all things being equal, no child should be deprived of that maternal influence unless it be shown that there are special and extraordinary reasons for so doing."

There is not a word of testimony that appellant is not a person of good moral character. From the record there can be

**190**

no doubt of her love and affection for this little girl. Appellant is not employed and thus is in a position to give full attention to her daughter when the latter is not in school. On the other hand, if Rebecca is left with her father, who is employed, she will be mainly under the care of a step-mother.

The stepmother testified that when she and respondent obtained possession of the child by stealth on June 22, 1970, the child's undergarments were wet and soiled and the child's hair was dirty. With this exception, respondent's evidence, to the extent that it tended to show that appellant was not a fit person to have custody of the child, harked back to a period of more than five years previous to the date of the hearing and covered a period of only a few months. Appellant was not in a position to rebut these assertions except by her own testimony because, as she said, "I didn't know anyone in Kansas City but his family."

The transcript also reveals that respondent contributed nothing toward the support of Rebecca from February, 1968, up until the date of the hearing in July, 1970.

■ As the cases point out, before a mother should be deprived of the custody of her young child, particularly a girl, the evidence must show that she is *demonstratedly unfit* to assume the child's proper care. Certainly there is no such showing in this case.

The judgment should be reversed and the cause remanded, with directions to set aside the judgment entered and enter a new judgment awarding the custody of this child to appellant, and provide in said judgment that the father shall be permitted to visit it at all reasonable times, and to award a reasonable sum against respondent for the support and maintenance of said child. Your Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court, and the judgment is reversed and the cause remanded. All concur.