254 S.W.2d 270 (1953)
DAVIS
v.
DAVIS.
No. 28541.
St. Louis Court of Appeals, Missouri.
January 20, 1953.
*271 Hinkel & Carey, Sidney L. James, St. Louis, for appellant.
Burr S. Goodman, St. Louis, for respondent.
HOUSER, Commissioner.
This is an appeal from the judgment of the circuit court modifying a divorce decree with reference to the custody of Patricia Ann Davis, a child who is now 8 years of age.
On September 11, 1945 the father of the child, Charles Earl Davis, on his petition obtained a divorce from Evelyn Davis, together with the custody of the then 2 year old child from February 1st to August 1st of each year. The court awarded the custody of Patricia Ann to her mother from August 1st to February 1st of each year, and ordered that during the periods when the respective parties had custody the other party should have temporary custody on Saturdays and Sundays.
In 1947 both parties filed motions to modify the 1945 decree. After a hearing the trial court dismissed the mother's motion, sustained the father's motion, and gave him full-time custody of the child except for Sunday, Christmas and birthday afternoons, and the month of August, during which times the mother was allowed visitation privileges.
On November 1, 1951 Evelyn Davis Hartgraver, the mother, filed a motion to modify the 1947 decree, alleging the following changes of condition: that the child has attained the age of 8 years; that the mother is happily remarried, has a comfortable home and that her present husband, Harold Hartgraver, is willing and anxious to provide a home for the child; that although the custody of the child was granted to the father, her custody and control in fact have been assumed by the grandparents of the child, with whom she has lived constantly; that the grandmother is in poor health and unable to properly care for the child, who is permitted to roam the streets unattended and is not receiving proper attention. Movant prayed that the 1947 decree be modified so as to give to the mother the custody of Patricia Ann, with reasonable visitation privileges to the father.
After a full hearing on November 23, 1951 the mother's motion to modify was sustained and the decree was again modified to give the mother custody of the child, allowing the father temporary custody every other week from 1 P. M. on Saturdays until 4 P. M. on Sundays. From that judgment Charles Earl Davis, plaintiff, has appealed, claiming that there was no evidence of new facts or changed conditions warranting modification of the previous judgment and no evidence that the welfare of the child requires a change in custody or that a change in custody would benefit the child.
Following the 1945 divorce and custodial arrangement, and on November 7, 1946, Evelyn Davis married Harold Hartgraver. No children have been born of this marriage. Harold Hartgraver is a maintenance man employed in the Water Division of the City of St. Louis at a salary in excess of $200 per month. He has been in the employ of the city, in civil service status, for nearly five years. He is fond of Patricia Ann, and testified that he would treat the child as his own and give her proper religious training. He is a member of the Methodist Church. He rents the house at 1712a North 13th Street in the City of St. Louis for $12 per month. He has no outstanding debts. Their living accommodations *272 consist of three rooms, a bedroom, kitchen and dining room. There is a place for Patricia Ann in the front room, where she would be to herself. They have toys for Patsy, a big yard and there are children in the neighborhood with whom she can play. The Hartgraver home is very clean and nicely kept. Evelyn Davis Hartgraver is presently employed, but intends to give up her work. She testified that she would dress the child properly, take her to school, continue her in her present school until the end of the school year, and devote her time to the child.
Charles Davis married his present wife, Laura, after the divorce. They have a 5 year old child and a second child less than a year of age. Laura Davis wants her husband to retain custody of Patricia Ann. She loves the child like her own, and wants very much to have her in the home. She thinks of Patricia Ann as one of her own children. Mrs. Davis is not employed outside the home. She devotes all her time to the maintenance of the home and the care of the children, and sees to it that Patricia Ann plays with her children. Patricia Ann usually goes to bed by 9 or 9:30. The Davises are "always there" when she goes to bed and if she is not at her grandmother's she is at her father's house. Davis works for the City of St. Louis in the assessor's office at a salary of $275 per month. He has at all times supported Patricia Ann and wants to keep her. This is Davis' third marriage. He was separated from his present wife on one occasion for approximately five weeks. During this separation his former wife Evelyn, movant herein, called him twice at his office suggesting that they go out together on a boat excursion, but he declined to go with her. From June, 1947 until October, 1950 the Davis home was in the 2600 block of 13th Street in the City of St. Louis, in a 3-room house rented by plaintiff. Plaintiff's mother, Della Wells, lives at 10th and Madison, which is two or three blocks from the Davis house. The Wells' living quarters consist of three large rooms and one small room. In October, 1951 Mr. Wells became ill. The Davis family then moved into the Wells home. Mr. Wells died on October 20, 1951. Since that time the household has consisted of Della Wells, Patricia Ann Davis, Charles and Laura Davis, and their two children.
Our duty is to review the whole record, giving prime consideration to the best interests and welfare of the child, to determine whether movant has shown by a preponderance of the credible evidence that there has been a change of facts and circumstances occurring since the entry of the 1947 decree, sufficient to require a change in the custodial arrangements then made. On this review we should defer to, and not lightly disturb, the judgment of the trial court. But if that judgment is in conflict with the clear preponderance of the evidence and discloses a manifest abuse of judicial discretion, this court should direct the entry of the proper judgment under the law and the evidence. Fago v. Fago, Mo.App., 250 S.W.2d 837.
To establish her case defendant maintains that Patricia Ann has been living with her grandmother, Della Wells, since the entry of the 1947 decree, and not with plaintiff to whom the court awarded legal custody; that plaintiff has not taken care of the child; and that the grandmother has been too sick to properly care for the child; that Mrs. Wells is "sick quite a bit" and has "some kind of spells" which last from a few days to a week; that she goes to a doctor regularly; that she has been sick in bed about four times during the past year; that during her illnesses Patricia Ann is cared for, the dishes washed and the house cleaned by a neighbor's child who is about 10 years old; that the 10 year old takes Patricia Ann shopping on 14th Street and to the show "and different places"; and that the child, when delivered into defendant's custody on weekends, is not clean and her hair is not combed. Plaintiff concedes that his mother has been ill but claims that she has only "usual ailments" and is ill no more than anybody else. According to Mrs. Wells she has no chronic illness, only nervousness, and is in no worse health than any other woman who goes through her stage of life. She is 50 years of age.
On the question of actual residence plaintiff, conceding that the child spent *273 most of her time at the home of Mrs. Wells, testified that the child stayed at his home during the first month following the entry of the 1947 decree but that a situation developed by reason of the conduct of defendant's husband which made it impossible to keep the child there. This was the belligerent attitude of Mr. Hartgraver when he would come to the Davis home on Sundays to take the child for afternoon visiting. He would cause trouble, argue and threaten to take plaintiff outside and whip him, and in order to avoid arguments and confusion in the presence of the children plaintiff and his parents decided to have Hartgraver call for the child at the Wells home. Thereafter Patricia Ann stayed at the Wells home, although she occasionally slept at the Davis home. Another reason given by plaintiff for not keeping Patricia Ann at his home at all times was that the grandmother wanted the child, had taken care of her since infancy, and had been "more of a mother to her than anybody else." He could not "break his mother's heart" by taking the child away from her completely, and stressed the fact that they lived close to one another. The two homes were only two blocks apart, according to plaintiff. Plaintiff testified that the Wells and Davis families would have lived together if they had had a large enough house; that the Davis family went over to the Wells home every evening; that they practically lived there; that they lived together "just the same as one family"; that he either had the child with him or had been with the child at the home of his mother practically every night since May 23, 1947; that the Davis family would have supper at his mother's house at least three or four times a week; that after supper they would "stay there, the whole family, the children would play; we watched television, I helped my father with his workalmost every night of the week. We went shopping and go to shows, or things like that, like anybody else would. But for all practical purposes we lived together with the exception of the sleeping quarters." The grandmother drove the child to school in her automobile and went to get her in the afternoons, and sent her to church. Mrs. Wells cooked the child's meals and made dresses for her. At one time Patricia Ann had 47 dresses in addition to several skirts, blouses and sweaters. Her grandmother would see that the child was clean and that she bathed every night. Mrs. Wells has been taking her to dancing school once a week for five years and to acrobatic school twice a week for two and one-half years. Next door neighbors corroborated the fact that Patricia Ann is well cared for; that her clothes are immaculate and that she is nicely dressed when she goes to school, church or elsewhere; that no mother could take better care of her; that plaintiff and his wife are at the Wells home most of the time.
During the trial the trial judge announced that investigators from the probation office approved both of these homes insofar as physical environment is concerned.
This evidence presents no substantial change of conditions since the entry of the decree of June 7, 1947 requiring or justifying a change in the custodial arrangements. The fact that the child is four years older is no sufficient change to require a change of custody. Fordyce v. Fordyce, Mo.App., 242 S.W.2d 307. The fact that the child has slept and lived at her grandmother's house most of the time since the date of the last decree cannot afford the basis for a change of custody. This represents no real change in the child's life. The baby was brought from the hospital directly to the grandmother's home when she was two weeks old. She was with her grandmother "off and on" until the father of the child was discharged from the army. During plaintiff's army service, when Della Wells would "get after" the mother of the child for "running around" she would "get mad" and take the baby to her own mother's, and when she "got mad" at her own mother she would bring Patricia Ann back to Mrs. Wells, who was always glad to get her and would take care of her night and day. It is apparent that the child is accustomed to life with her grandmother and that even when the two families lived two blocks apart their living arrangements were such that for all practical purposes they were living together. At the time of the hearing *274 they were actually united under the same roof. This is not a case of a parent who is granted legal custody abandoning actual custody to another. The devotion of plaintiff to this child, his concern for her welfare and desire for constant association with her and between the child and grandparents, wife and other children as one happy family is manifest from this record. It was testified to by plaintiff, and not denied by defendant or her husband, that one of the reasons for the action of plaintiff in placing the child in the home of the grandmother was the unprovoked belligerent attitude of defendant's present husband toward plaintiff and the conflicts which he caused in plaintiff's home.
Defendant's evidence that the grandmother has been in poor health and that Patricia Ann has suffered as a consequence is vague, uncertain and not convincing, in view of the countervailing evidence on the question. There is not one iota of credible testimony that the child has not received proper care during the times when the grandmother has been incapacitated, nor is there anything about the nature or extent of the latter's ailments which has adversely affected the welfare of the child. The charge that the child has been permitted to roam the streets unattended fails completely. The fact that defendant is remarried and has a happy home into which she can take the child represents no change of condition. This marriage took place before the previous hearing and it is presumed that the court took that fact into consideration when defendant's motion to modify was dismissed in June, 1947.
It is true that, all other things being equal, a mother will be given custody of a child of tender years, particularly if the child is a female, Armstrong v. Armstrong, Mo.App., 185 S.W.2d 845; Abel v. Ingram, 223 Mo.App. 1087, 24 S.W.2d 1048, but all else is not equal in this case. One benefit the child would enjoy as the result of a change of custody would be the constant association between mother and daughter, but the value of this association must be appraised in the light of the record, which shows that when the child was only 2 years old the mother was denied custody in a hearing based upon charges of improper association with other men, absence from the home, separation from the child, improper care, and refusal to grant the father access to the child, and in the light of the decree of June 7, 1947 which reduced the custodial rights of the mother from six months to one month of the year. The evidence indicates that in the early years of the child's life the mother was running around and that her conduct was such that the older women in the family remonstrated with her. From this record the inference is plain that she was living an unsettled life prior to her present marriage. While it is entirely possible that she has reformed, there is not one word of testimony in this record with respect to her present habits and mode of living from which the court could appraise her character, attitude toward religion, respect for law or ability otherwise to provide the child with a beneficial home environment, other than her testimony that she is happily married, and that she would devote her time to the child. The evidence further shows that she is employed outside the home and although it is her intention to give up her work she has not done so. Another consideration is that defendant's husband is apparently of a disposition to provoke quarrels unnecessarily.
On the other side of the ledger the benefits to the child by maintaining the present situation are apparent. She will have the constant association of her grandmother, the children of the present Mrs. Davis, who are her blood relatives, and her father. Weighing the scales as between the stepfather and the stepmother, the balances are heavily in favor of the latter. Patricia Ann will remain in the same school, attend the same church, and maintain her present circle of friends. Her dancing and acrobatic lessons presumably will continue. We find no unfavorable aspect of the Davis home except the five months' separation of plaintiff and the present Mrs. Davis, which rift apparently has been mended.
The modification ordered by the trial court would change the entire pattern *275 of the child's life and subject her to new routines and different standards of discipline. Except in cases of necessity such change is not desirable, Fordyce v. Fordyce, supra, and we find in this record no apparent necessity for thus upsetting the established order of things. At best, the change would be in the nature of an experiment, and experiments with a trust of this nature should not be indulged. Irvine v. Aust, Mo.App., 193 S.W.2d 336.
The order of the circuit court is in conflict with a clear preponderance of the evidence and must be reversed. The cause should be remanded with directions to the trial court to set aside its order of January 4, 1952 and to enter a new order overruling respondent's motion to modify, and the Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The order of the circuit court is, accordingly, reversed and the cause remanded with directions to the trial court to set aside its order of January 4, 1952 and to enter a new order overruling respondent's motion to modify.
BENNICK, P. J., and ANDERSON, and RUDDY, JJ., concur.