Mary Ann SMITH, Plaintiff-Appellant,

v.

Roy SMITH, Defendant-Respondent.

No. 32966.

St. Louis Court of Appeals.

Missouri.

Dec. 17, 1968.

Guilfoil, Symington, Montrey & Petzall, John P. Montrey, St. Louis, for plaintiff-appellant.

Hal B. Coleman, Clayton, for defendant-respondent.

ELGIN T. FULLER, Special Judge.

This is an appeal from the judgment of the Circuit Court sustaining defendant's motion to modify a divorce decree and awarding custody of the son, Gregory, to the father, Roy Smith.

In the original divorce decree, entered January 11, 1963, plaintiff, Mary Ann Smith, was granted a divorce and was awarded custody of the two children born of the marriage, Gregory, age ten years, and Gaye Marie, age eight years, and was awarded child support of $200.00 per month per child. Defendant's motion to modify the original decree was filed August 31, 1966. On the 23rd day of December, 1966,

plaintiff also filed a motion to modify, asking that the child support provisions of the original decree be increased to $300.00 per month per child. On the same day, December 23, 1966, plaintiff filed her motion for allowance of attorney's fees asking for attorney's fees not only in connection with defendant Roy Smith's current motion to modify but also for attorney's fees and expenses in defending a *former* motion to modify which was filed by the defendant in March, 1963. Plaintiff, on December 3, 1963, had voluntarily dismissed her earlier motion for allowances without prejudice, and thereafter on the 10th day of September, 1964, defendant dismissed his first motion to modify.

In the case now before this court, plaintiff was awarded $500.00 for her attorney's fee, but no allowance was made for services of her attorney in the former and dismissed motion to modify.

Plaintiff, Mary Ann Smith's motion to modify was sustained to the extent of increasing the child support for the daughter, Gaye Marie, from $200.00 per month to $275.00 per month.

Plaintiff claims error in the Circuit Court's awarding custody of Gregory to the father and in the Court's refusal to allow plaintiff money for attorney's fees and expenses in connection with defendant's *first* motion to modify, which was dismissed September 10, 1964.

■ The principal question in this case involves the solemn and important duty of deciding the custody of a child as between his father and mother. The decision of a trial court in custody matters, when tested by appeal, comes weighted with the inference that the court has properly exercised its judicial discretion in determining the best interests of the child, and unless such discretion has been abused, or unless we can point to some reason for not deferring to the findings of the trial court or, of course, unless this court is convinced that the welfare of the child requires some other

disposition, the decree should not be disturbed.

◼ Frequently in custody cases courts are called on to consider evidence of immorality, varying degrees of bad conduct and habits or even rascality of one or both of the parents. But that is not this case. The record discloses that both the mother and father are of respectable character and that both live in neighborhoods where social, educational and other environment advantages are about equal.

◼ The original divorce decree awarded custody of the two children, then ten and eight years of age, to the mother, and no appeal was taken and therefore the decree was final and can not be disturbed except in such a proceeding as this. Any modification of the original decree can only be made upon proof of new facts and changed circumstances and conditions subsequent to the original decree which, in the best interests of the child, require modification of the custodial provisions of the original decree. Watkins v. Watkins, Mo.App., 230 S.W.2d 778; Baer v. Baer, Mo.App., 51 S.W.2d 873; Hurley v. Hurley, Mo.App., 284 S.W.2d 72; Cherry v. Cherry, Mo.App., 272 S.W.2d 700. It is our duty on appeal to review the entire record with regard for the guiding principle that the welfare of the child is of controlling importance. Mayo v. Mayo, Mo.App., 244 S.W.2d 415; Pope v. Pope, Mo.App., 267 S.W.2d 340; Davis v. Davis, Mo.App., 254 S.W.2d 270. The defendant carries the burden of showing by a preponderance of the evidence changed facts and circumstances which, in the best interests of the child, require a modification of the custodial provisions of the original decree. Armstrong v. Armstrong, Mo.App., 185 S.W.2d 845; and Davis v. Davis, supra.

The record must be reviewed carefully to determine if the welfare and best interests of the son, Gregory, will be promoted by placing him in the custody of his father. While this court has, on at least two occasions, said that the fact that a child has

grown older is not, *in and of itself,* a sufficient change of condition to warrant a change in custody, Fordyce v. Fordyce, Mo. App., 242 S.W.2d 307, 314, and Davis v. Davis, supra, 254 S.W.2d 1. c. 273, yet we must not close our eyes to the fact that this sixteen year old young man is not within the age span when the chick needs the hen, the colt the mare, and the cub the mother bear. Gregory will be seventeen next April. He has been with his father since July 29, 1966, nearly seven months before the hearing on the father's motion to modify. July 29, 1966, he packed his clothes and went to his father's home. In explaining his reasons for leaving his mother's home, he testified:

"Well, it wasn't just one thing, it just came a total—you know, it was always getting worse and worse. I wanted to move in with my father for a long time. As it was, things just never came around that I could * * * she (His Mother) used to have us doing things that she would never even attempt to do and leave us doing them all day and expect us to stay home the whole day while she was out at times. And, we used to have to cook our own meals at night and eat alone, my sister and myself. And, she really kind of kept me in, she wouldn't let me grow up, in a way, I guess you'd put it. Because, until I think I was fourteen or a little bit—even before then, I couldn't even go to the show alone, she wouldn't let me go out to the show. You know what I mean, parties were kind of out, just a whole lot of things that never seemed to be right with me. * * * She just seemed like she didn't want me to do anything, she always wanted me home. * * * After school she always like me to stay in. I couldn't go out then."

He then related how his mother went from the home in the evenings, and when his mother left he would be in charge of his twelve year old sister, but that his sister would not obey him and that his mother would give him "heck;" that he and his

sister constantly fought—that "it is unbelievable the way we fight. The house is sometimes in shambles;" that his mother helped with the chores around the house but not often; that his mother was home Saturdays, but she usually was not helping him. " * * * she'd just watch."

Mrs. Smith explains Gregory's going to live with his father by relating an incident occurring the morning that Gregory left her home. Mrs. Smith called Gregory by telephone and told him that he was to start cleaning the basement that day and for him to stay home and do that job. About forty-five minutes later, the daughter, Gaye Marie, called her mother, who was at work, and told her that Gregory had packed his clothes and had left the house. Gregory claimed that the incident about his mother asking him to clean the basement didn't have much to do with his leaving and going to his father's home.

On prior occasions, Gregory had told his father that he wanted to live with him, but the father had always told him that he belonged with his mother and sister. When he called defendant July 29, Gregory was crying and told his father that if he wouldn't let him come to his house, he was going some place and didn't know where. The defendant then told the boy to come to him. The mother does not claim that the father did anything to entice or induce the son to leave the mother's home. Gregory testified positively that his father did nothing to get him to move and that, in fact, he tried to get him to go back. Mr. Smith testified that when Gregory came to his house in July, 1966, he told him that he should go back to his mother, but because of the boy's emotional state and strong feeling about wanting to live with him, the father refused to force him to leave.

The record discloses a very close relationship between this father and son. It is apparent also that Gaye Marie is equally as close to her mother. Gregory and his father take many trips together. They are together in the home nearly every night. The father is deeply interested in his son's work in school and encourages Gregory in every way. Gregory's grades have improved since he has resided with defendant. His lowest grades are in Language and Spanish. The father has had Gregory's Spanish teacher bring phonograph records to the home to aid him with his Spanish, and has encouraged his son to read books. This young man attends church every Sunday, keeps regular hours, joins the father in performing certain duties in the home, including cooking and cleaning house. Gregory bowls every Friday at 4:00 P.M. and his father picks him up at 6:00 P.M. His health, his pleasures, his comforts and his education have been zealously looked after by the defendant.

 Without any thought of rewarding or punishing either parent, and keeping in mind the ultimate question, were the best interests of the son himself served by the terms of the modification appealed from, we think the answer must be given in the affirmative. We have said many times that the welfare of the child itself is the first consideration always to be kept in mind, and is far superior to the claim of either parent. If a child be of sufficient age to form an intelligent preference, the court or judge may consider that preference in determining the question of custody.

 Every son needs not only the guiding hand of his father but also the feminine influence of his mother. And that is what the trial court tried to assure. Plaintiff mother was awarded temporary custody of Gregory the first and third weekends of each month from 5 P.M. Friday to 8 P.M. Sunday and custody for the entire month of July, each year. The decree of the trial court exhibited a keen insight into the son's best welfare.

Plaintiff claims that a second error was committed in the Circuit Court by denying plaintiff attorney's fees and expenses in connection with a *prior* motion to modify which was filed by defendant. As stated hereinabove the original divorce decree was entered January 11, 1963, wherein plaintiff

was given custody of both children. Defendant, on March 16, 1963, filed his first motion to modify that decree, asking the custody of both children. Plaintiff mother, in connection with defendant's first motion to modify, filed her motion for suit money and attorney's fees October 28, 1963. In the interim there was extensive legal work performed by her attorneys. Minutes of the proceedings on said motion were, at the request of appellant, included in the transcript and disclose that that motion to modify had a strange and unusual life. After several depositions, motion to quash deposition, motion to compel psychiatric examination, requests for admissions, motion to consolidate, and three different hearings on the motion, final argument on the motion being set for January 24, 1964, and final submission to the court February 5th, 1964, there was an interlocutory order entered June 10, 1964, reciting:

> "Upon evidence heretofore heard and adduced the Court finds that the welfare of the two minor children of the marriage will best be served by transfer of their custody from the plaintiff to the defendant provided proper custodial care can be arranged for by the defendant. The Court, therefore, retains jurisdiction over this cause for the taking of further testimony relative to what custodial arrangements defendant can make, and this cause is set for the taking of such testimony at 9:30 A.M. on Monday, 22 June, 1964. * * *."

On the designated day, June 22, further testimony was heard and the cause continued until July 16, 1964. But on July 15 and July 17 depositions were filed on behalf of both plaintiff and defendant, and the cause was continued for the taking of further testimony to July 21, 1964. But there was never a final ruling on the motion, for the trial court declared a mistrial July 21, 1964, and disqualified itself from proceeding further. However, back on December 3, 1963, plaintiff had voluntarily *dismissed* her motion for suit money and for attorney's fees, and after one year and six months from the

date of filing defendant's motion to modify and considering the history of the defendant's said first motion to modify, it is small wonder that on September 10, 1964, defendant, too, gave up the ghost and voluntarily dismissed his motion to modify without prejudice and paid the court costs to the date of such dismissal.

Under these facts is plaintiff entitled to an allowance for her attorney's fee and for expenses in connection with the first motion to modify and to have such allowance made in a subsequent motion to modify filed two years and nine months *after* she had dismissed her motion for allowance of expenses and attorney's fees and two years after defendant had dismissed his first motion to modify? Regrettably the answer is no.

A motion to modify a divorce decree is itself treated as a petition in an original action. North v. North, 339 Mo. 1226, 100 S.W.2d 582, and Wilton v. Wilton, Mo.App., 235 S.W.2d 418, 419. Such motions are not "mere adjuncts to the original proceeding," Olson v. Olson, Mo.App., 184 S.W.2d 768, and while such motions are, in a sense, a continuation of the original action, they are independent proceedings. "The orders, decrees, and judgments upon the motion, in fact adjudicate new and different matters and rights without respect to the matters and rights adjudicated in the original proceedings." Harriman v. Harriman, Mo.App., 393 S.W.2d 106; Simms v. Simms, Mo., 253 S.W.2d 814; Hayes v. Hayes, 363 Mo. 583, 252 S.W.2d 323. A motion to modify a divorce decree is a "civil suit" in that it is in the nature of an independent civil proceeding and is a "civil suit" within the meaning of those words in the change of venue statute. Hayes v. Hayes, supra.

In Schenberg v. Schenberg, Mo.App., 307 S.W.2d 697, 1. c. 700, this court stated: "Temporary allowances pendente lite cannot be made after final decree or dismissal, either in suits for separate maintenance, Smith v. Smith, Mo.App., 176 S.W.2d 647,

or divorce cases. Beckler v. Beckler, 227 Mo.App. 761, 57 S.W.2d 687; Coons v. Coons, Mo.App., 236 S.W. 364; Creasey v. Creasey, 175 Mo.App. 237, 157 S.W. 862; Lawlor v. Lawlor, 76 Mo.App. 293; Watkins v. Watkins, 66 Mo.App. 468; Friedman v. Friedman, 132 Okl. 45, 269 P. 257; Hengen v. Hengen, 85 Or. 155, 166 P. 525; Wald v. Wald, 124 Iowa 183, 99 N.W. 720; 27 C.J.S. Divorce § 207e. The reason is that the action is no longer pending and the court has no further jurisdiction of the parties or of the subject-matter after the case is decided on the merits. * * * "

█ There was never an order entered on plaintiff's motion for attorney's fees and for expenses in connection with the first motion to modify because plaintiff herself dismissed said motion, and she dismissed her said motion December 3, 1963, which was before defendant dismissed his motion to modify. Had she not dismissed her motion for attorney's fees and expenses the trial court could have ruled her motion any time. And if her motion had been *pending,* even up to the time defendant dismissed his motion to modify, the court could have sustained her motion. Defendant could not defeat plaintiff's claim by *his* dismissal, for it would be a fraud upon plaintiff to permit him to defeat her rights by dismissing his motion at a time when she had a pending motion for attorney's fees and expenses. Waters v. Waters, 49 Mo. 385; Dees v. Dees, Mo.App., 258 S.W.2d 243. But that is not this case.

In McKenzie v. McKenzie, Mo.App., 306 S.W.2d 588, the trial court entered a final decree on October 9, 1956. Prior to that date the trial court indicated his intention to make permanent the award of custody of the children to the defendant mother. Plaintiff then sought a writ of prohibition. This court issued its preliminary rule in prohibition, but on October 5, 1956, the preliminary rule was discharged. After our mandate was sent down, the decree awarding custody of the childen to the mother was entered on October 9, 1956.

On October 17, plaintiff filed his motion for a new trial. On October 23, defendant filed her motion for services that *had been performed* in connection with the prohibition suit prior to the decree. On January 7, 1957, the trial court sustained the motion for fees for the services in the prohibition suit. At page 592(10) we said: "* * * If the defendant was entitled to fees for her counsel's services in the collateral action, the motion for such fees should have been filed before the final decree in the divorce case was entered and the award made a part of the decree. The decree was conclusive not only as to all issues tried but also as to all issues that might have been litigated. Noll v. Noll, Mo.App., 286 S.W.2d 58. The court was therefore without jurisdiction to enter a judgment for attorney's fees for the services rendered during the pendency of the divorce suit after the suit had been finally determined. * * * " That part of the trial court's order allowing fees for the defense of the prohibition proceeding was reversed.

In Beckler v. Beckler, 227 Mo.App. 761, 57 S.W.2d 687, the Court upheld the contention of appellant that the trial court had no right, power or jurisdiction to hear, try or determine an application for attorney's fee and suit money or to render any judgment on said motion in favor of the movant after granting a decree of divorce.

Williams v. Williams, Mo.App., 349 S.W.2d 422, presents the same principle. There a divorce petition was filed December 5, 1960, and personal service was obtained on the defendant December 7, 1960. On the 20th day of December, plaintiff filed her motion for allowance pendente lite, which was presented to the court December 29, 1960. The trial court overruled the motion on the ground that thirty days had not elapsed since service was had on the defendant. Plaintiff appealed. But in the meantime plaintiff called for a hearing on her petition for divorce. Plaintiff was granted a divorce, but lost her appeal from the order of the circuit court overruling her motion for temporary allowances. We said

in that case: "So long as the divorce suit is pending the wife under proper circumstances is entitled to alimony and suit money and the court is empowered to decree these allowances 'pending the suit for divorce;' § 452.070, supra, but such power may only be exercised during the *pendency of the divorce suit.* (Emphasis ours.) Coons v. Coons, Mo.App., 236 S.W. 364; Creasey v. Creasey, 175 Mo.App. 237, 157 S.W. 862. As early as the case of Adams v. Adams, 49 Mo.App. 592, we ruled that after the divorce cause has been heard on the merits and ended, no award for alimony pendente lite can be made for then the jurisdiction of the court is determined."

A similar situation is presented in Hogsett v. Hogsett, Mo.App., 409 S.W.2d 232. There the wife commenced her suit for divorce and filed a motion for temporary alimony, suit money and attorney's fees. For more than a year thereafter the parties and their attorneys engaged in rather extensive negotiations in an effort to agree on the amount to be paid Mrs. Hogsett if a divorce were ultimately granted. But while the suit was still pending and before the motion for allowances had been presented to the court, Mrs. Hogsett died. Thereafter her attorney filed a motion to be substituted as party plaintiff and for a court order allowing him an attorney's fee and for reimbursement for expenses necessarily incurred in the prosecution of the divorce action. The Kansas City Court of Appeals affirmed the action of the Circuit Court in denying the motion. Both courts held that when Mrs. Hogsett died the divorce suit abated and therefore the court could not grant an attorney's fee or expenses after her death, for there was then no divorce suit pending in which such allowances could be made.

The trial court ruled properly in denying the allowance of an attorney's fee and expenses in connection with the prior motion to modify where both plaintiff's motion for attorney's fees and expenses and defendant's motion to modify had been previously dismissed. The court had no jurisdiction to entertain and adjudge such matters in a new motion to modify the divorce decree filed approximately two years nine months after she had dismissed her motion for attorney's fees and expenses in connection with defendant's original motion to modify the divorce decree.

The decree of the Circuit Court is affirmed.

RUDDY, Acting P. J., and WOLFE, J., concur.