**Marilee BRYAN, Plaintiff-Respondent,**

**v.**

**Robert N. BRYAN, Defendant-Appellant.**

**No. 8913.**

Springfield Court of Appeals,
Missouri.

Feb. 23, 1970.

Theo. G. Scott, Buffalo, for defendant-appellant.

Alex Peebles, Quinn, Peebles & Hickman, Kansas City, for plaintiff-respondent.

HOGAN, Judge.

In this action to modify a decree of divorce, the defendant appeals from the order of the trial court increasing plaintiff's allowance for child support from $35 per month to $125 per month, and from the court's order awarding plaintiff the sum of $150 as attorney's fees.

The parties were apparently quite young when they were married. They became the parents of a little girl, who was five years of age when this motion was heard. In November 1966, the parties were divorced. The plaintiff was awarded custody of her minor child, and defendant was ordered to pay the sum of $35 per month as child support. It was developed at the trial that the child had actually been in the custody of her maternal grandparents since the divorce.

At the time the divorce was granted, Mr. Bryan was an engineering student at the University of Missouri at Rolla. The amount of child support had been set at $35 per month, Mrs. Bryan said, "[b]ecause he was a student * * * and so he could finish school without having too much difficulty." Plaintiff had been a "licensed beauty operator," but she had abandoned that occupation permanently because "[t]here is not enough money in it." A native of Hickory County, she had recently moved to Kansas City. Her child had been, as we say, with her parents, and she had been visiting her in Hickory County on weekends. She had found an apartment within her means in Kansas City and wanted to take her daughter with her. Mrs. Bryan testified that she had found an acceptable "baby sitter" who would care for her child and furnish one meal a day for $25 per week.

Plaintiff intended to share her apartment with a "girl friend" who would presumably pay part of her rent, but even unfurnished the apartment would cost $125 per month. Mrs. Bryan worked in the "stock department" at Ralston Purina in Kansas City. She was not very definite about the nature of her work, but her gross pay was $315 per month, her "take-home" pay was "around $235.00 to $240.00 a month," and she was obliged to pay her own utilities in the unfurnished apartment she had rented. Plaintiff owned a car, on which she was making monthly payments of $72. She planned to "get furniture from my folks and take some up [to Kansas City]." It was plaintiff's "judgment" that she could manage to care for her child for $30 per week.

The defendant, who was remarried, had graduated in June 1968 as a mechanical engineer. He was employed as a "product engineer" by the Bendix corporation in Kansas City. He earned, after seven or eight months on the job, a gross salary of $775 per month, which, after taxes and deductions, amounted to $599.54 per month. At trial time, Mr. Bryan owned an auto-

mobile worth $3,000, on which he owed $2,600, a pickup truck worth $900, on which he owed $800, and a house trailer worth $2,500, on which he owed $2,000. Mr. Bryan also owed an open note at the Bank of Urbana, Missouri, in the sum of $1,700. He estimated his fixed expenses to be $569 per month, plus $170 per month more for food, clothing, medical expense, recreation and laundry. Mr. Bryan answered "Yes" to counsel's question, "So on your present income you do have a deficit each month * * * at the present time?" Mr. Bryan testified that he "* * * was wanting to pay about $50.00 [per month] but * * * could get up as high as $60.00, I believe."

In this court, the defendant contends that the amount allowed as child support—$125 per month—is excessive; it is more than he can afford to pay, he says, and more than the child needs at present. The respondent answers this by saying that if the defendant is having financial difficulty he should reduce his standard of living in order to provide for his child.

■ We are handicapped in this case by an incomplete record. The parties filed affidavits showing their respective resources and their estimated expenses and needs. These affidavits were received in evidence by agreement as exhibits 1 and 2, and the trial court apparently relied on them in fixing the amount of the award for child support. The exhibits were not filed here. To some extent, the parties repeated the contents of the exhibits in their oral testimony, but we do not have a complete picture of either party's financial status before us. In the circumstances, we must presume that the contents of the exhibits were favorable to the judgment entered and unfavorable to the appellant. Lange v. Baker, Mo.App., 377 S.W.2d 5, 7 [4]; Fuzzell v. Williams, Mo.App., 288 S.W.2d 372, 373 [2]; Cooper v. Massachusetts Bonding & Ins. Co., 239 Mo.App. 67, 71, 186 S.W.2d 549, 551–552 [6].

■ For whatever it is worth, we will say that we have gone over the part of the record we have very carefully. Primarily, the amount to be awarded as child support is a matter resting in the sound discretion of the trial court, and we review the record only to determine whether or not that discretion has been abused. McCann v. McCann, Mo.App., 448 S.W.2d 323, 325 [1]; Houston v. Snyder, Mo.App., 440 S.W.2d 156, 159 [3]. On the face of the record before us, there is an entirely rational basis for the trial court's judgment. Plaintiff, 22 years of age, had of economic necessity left her child with her parents; she had obtained gainful employment in Kansas City and wanted her child with her. She had "planned out" how much would be required to support her daughter, and she set that figure at $30 per week. Certainly it was most desirable for the child to be with her mother, and while the plaintiff's estimates of her needs were only projections in the nature of a conclusion, Houston v. Snyder, supra, 440 S.W.2d at 159, the amount allowed is only slightly in excess of the cost of day care for the child. We are in no position here to say there should have been a particularized substantiation of plaintiff's estimate. As for the father's ability to pay, we agree that no father should be saddled with payment of a sum beyond his ability to pay, McCann v. McCann, supra, 448 S.W. 2d at 326–327 [6]; Houston v. Snyder, supra, 440 S.W.2d at 161 [11], but we cannot say that an award of $125 per month will probably impair the defendant's financial position or leave him without means to defray his necessary expenses. There appears to be some duplication of his items of expense, and in any event the trial court was entitled to reject his account of his living expenses to the extent it considered the estimate exaggerated. Anno., 1 A.L.R. 3d 382, § 10 [a], p. 403 (1965). We cannot confidently say that the trial court abused its discretion in fixing the amount of the award at $125 per month.

■ The defendant's other point is more technical. He claims that the trial court

was without jurisdiction to allow an attorney's fee of $150, because the motion to modify did not specifically pray the allowance of an attorney's fee, and no order allowing it was made until after the trial court lost jurisdiction of the cause. In support of this point, defendant cites Beckler v. Beckler, 227 Mo.App. 761, 57 S.W. 2d 687, in which it was held that the trial court had no jurisdiction to allow an attorney's fee for services at the trial after the divorce decree had been entered. As we understand it, the *Beckler* case typifies a line of cases which hold that the trial court's authority to make allowances pendente lite in divorce cases is incident to its jurisdiction in the principal case, and after the court's jurisdiction over the principal case determines, it cannot go back, so to speak, and allow temporary maintenance or award attorney's fees for services performed in the principal case. This rule has been applied in divorce cases, actions for separate maintenance, and motions to modify. Smith v. Smith, Mo.App., 435 S.W.2d 684, 688–690 [9–11] [12]; Schenberg v. Schenberg, Mo.App., 307 S.W.2d 697, 700–701 [3–9]. We do not have that situation here, but some discussion of the record is called for.

No attorney's fee was prayed for in the motion to modify. The motion simply set forth, in substance, the fact of the divorce, and the prior award of custody and support money to the plaintiff; that at the time of the divorce defendant was a student, but had now graduated and was earning "in excess of $600.00 per month"; that plaintiff was unemployed; and that the amount of child support first awarded was wholly inadequate, and defendant should be required to pay more. The prayer was simply that the court "increase the child support [and grant] such other relief as [it] deems fit and proper." Midway through the trial, after the plaintiff had testified, the trial court addressed the plaintiff, saying: "Let

me ask you one more question. I don't know whether there is a demand in this case asking for attorney's fees on this motion or not. Is there?" Counsel for plaintiff replied: "I would like to have some attorney's fees. I think it is within the discretion of the Court anyway." The court replied that the request had not been specifically set out, and asked plaintiff what agreement she had with her attorney concerning fees. Plaintiff stated, "[M]y father will have to pay it." Plaintiff was then asked by counsel if she would "like an allowance for attorney's fees," and she answered affirmatively. Plaintiff indicated that she would ask for "whatever amount the Court feels would be just." Counsel for defendant said nothing whatever during this conversation. The defendant then testified, and the court received the affidavits we have mentioned in evidence. At the conclusion of the trial, the court announced its findings orally and stated that it would allow an attorney's fee of $150. Again, no remark was forthcoming from counsel for the defendant.

The case was heard on February 22, 1969. On the same day a judgment was entered, reciting that the court found the issues for the plaintiff, and awarded plaintiff the sum of $125 per month and attorney's fees in the sum of $150.[1] On February 28, the defendant filed a motion for new trial. One of the allegations of error was that the trial court erred in allowing an attorney's fee, because it was not "raised or mentioned" in the motion and therefore defendant "did not have an opportunity to plead the issue." On March 6, twelve days after entry of the original judgment, plaintiff filed a motion stating that she was without funds, and praying that she be allowed a "reasonable amount" as an attorney's fee. On the same day, the trial court, without hearing further evidence and without vacating or setting aside the original judgment of February 22, entered an order allowing plaintiff an at-

1. This judgment was not included in the transcript, but pursuant to our discretionary authority, we ordered it supplied.

See Whealen v. St. Louis Soft Ball Ass'n, 356 Mo. 622, 625, 202 S.W.2d 891, 893 [3].

torney's fee in the sum of $150, "this sum not being in addition to the sum awarded as attorney fee on February 22, 1969."

We therefore do not have a case procedurally comparable to Smith v. Smith, supra, 435 S.W.2d 684, or to Schenberg v. Schenberg, supra, 307 S.W.2d 697, because the trial court's second order was made within the thirty-day period during which it retained control over its judgment and could " * * * vacate, reopen, correct, amend or modify its judgment for good cause." Rule 75.01, V.A.M.R. With respect to the court's continuing jurisdiction to make an allowance of counsel fees, this case is much more nearly comparable to Flynn v. First National Safe Deposit Co., Mo., 284 S.W.2d 593, although in the *Flynn* case the original motions to quash the writs of garnishment contained a prayer for attorney's fees which was renewed after trial, and the court heard evidence on the renewed motion. We need not and do not decide whether or not the trial court's continuing jurisdiction was properly invoked in this case; we are inclined to think it was, but the trial court had entered a final judgment disposing of all the issues on February 22. Having done so, it could not simply readjudicate the issue of attorney's fees by entering another judgment without vacating or setting aside the first order, at least in part, and entry of a second judgment alone would not serve to vacate or modify the original order. State ex rel. Berbiglia, Inc. v. Randall, Mo., 423 S.W.2d 765, 769 [5]; Irwin v. Burgan, 325 Mo. 309, 317–318, 28 S.W.2d 1017, 1021 [7,8]; Mitchell v. Dabney, Mo.App., 71 S.W.2d 165, 169–170. In our view, upon this particular record, the order of March 6 allowing attorney's fees is a superfluity which is of no effect.

The appeal need not be resolved along such technical lines. The substance of the defendant's complaint regarding the allowance of attorney's fees is that relief was granted beyond the scope of the pleadings. In this connection, he cites cases which hold that a motion to modify a divorce decree is in the nature of an independent proceeding and is treated as a petition in an original action, for example, Mahan v. Mahan, 239 Mo.App. 317, 192 S.W.2d 626. In that case, the court stated, 239 Mo.App. at 319, 192 S.W.2d at 628, that the statute authorizing the motion (to modify) " * * * does not specify what it shall contain, but we think it should be sufficiently definite to inform the opposite party of the facts to be relied on for modification." We have no disagreement with the ruling in that case—which incidentally did not turn on the sufficiency of the pleadings—but conceding that one office of the pleadings is to advise the parties of the issues to be tried, Johnson v. Flex-O-Lite Manufacturing Corporation, Mo., 314 S.W.2d 75, 79 [3], still Rule 55.54, V.A.M.R. [Section 509.500, RSMo (1959)] specifically provides that when issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleadings. In this case, the defendant was fairly advised that the issue of attorney's fees was in the case and that the evidence being presented was referable to that issue. Consent to the amendment of a pleading may be inferred from inaction or silence as well as from affirmative action. Evett v. Corbin, Mo., 305 S.W.2d 469, 474 [5]. In our opinion, the defendant was not entitled to sit mute while the issue of counsel fees was actually being tried and later claim that relief could not be granted because the issue was not pleaded. See Niedland v. United States, 3 Cir., 338 F.2d 254, 259.

For the reasons indicated, the judgment is affirmed.

TITUS, P. J., and STONE, J., concur.