John H. WOOD, Jr., Appellant,

v.

Concetta WOOD, Respondent.

No. 25446.

Kansas City Court of Appeals, Missouri.

Dec. 7, 1970.

The Legal Aid & Defender Society of Greater Kansas City, Paul T. Miller, Executive Director, Kansas City, Donald O. Tripp, Managing Atty., Civil Division, Liberty, for appellant.

Von Erdmannsdorff & Kuhlman, North Kansas City, for respondent.

JAMES W. BROADDUS, Special Commissioner.

Respondent, Concetta Wood, now Concetta Franklin, on July 29, 1969, filed a motion to modify a decree of divorce, said decree having been entered by the Circuit Court of Clay County on November 12, 1964. The motion was sustained on October 9, 1969, and Concetta was granted the care and custody of three minor children born of the marriage between herself and appellant John H. Wood, Jr. The ages of the children at the time of the hearing of the motion were David 8, Julia 7, and Robert 5.

Appellant, John Wood, Jr., while stationed in Italy with the Armed Forces, met and married Concetta Wood, now Franklin, when she was still in her early teens. She spoke little or no English. In 1962 John brought his new wife to the United States, and they lived with his parents in Liberty, Missouri. John was called back into the Armed Forces and Concetta went with him to the State of Washington.

After John was discharged from the Armed Services he and Concetta rode in a car to Liberty. Riding with them was a friend of John's by the name of Ralph Stout who also had been in the Armed Services. Stout's home was in Oskaloosa, Iowa, and John and Concetta Wood took him there. As related by Concetta "he (Stout) told me before we got to his home (Stout's) he knew how we were getting along, my husband and I, and he said if I ever needed any help just write to his mother or just call or come down and she would help me out, and so when we stopped and brought him home I met her and talked to her, and she told me that I was welcome and to come if I ever needed any help."

In the early part of 1963 Concetta left John and went to the Stout home in Oskaloosa. She did not take the children with her at that time "because I didn't know what I was going to do." John continued

to live with the children with his parents in Liberty.

Concetta attempted to obtain a divorce in Iowa but was told that she did not meet the residency requirements. John filed for divorce in Clay County, Missouri, and Concetta cross-filed. Upon the date that the divorce was to be heard, Concetta made the 8 hour bus trip from Iowa for the hearing, only to find that John had taken an overdose of sleeping pills and that the divorce hearing had to be postponed. It was after spending several months at the VA Hospital, as a result of the sleeping pills, John called up the divorce for hearing and Concetta, apparently through some confusion, arising out of her limited use of the English language, did not appear. The divorce was granted to John and he was awarded custody of the children.

After the divorce John and the children continued to live with his parents. Later, John married a woman with three children of her own and since that marriage they have had three other children. John at the time of the hearing of the Motion to Modify lived with his wife, Diana, and the nine children in Liberty.

Concetta, after leaving Liberty, lived with the parents of Mr. Wood's friend, Stout, in Oskaloosa, for a period of several months before getting an apartment with another girl with whom she worked. She was employed consistently since the divorce and had studied for and passed her examination and earned her American Citizenship in December of 1968. She married Larry Franklin in August of 1967. At the time of the hearing she was living with Mr. Franklin on a 15 acre tract of land about five miles east of Oskaloosa.

After the separation in 1963, the children were in the custody of John until Concetta had established herself in Oskaloosa. She then came and took the children for a period of time to Oskaloosa. After several months, Mr. Wood and his family came to Oskaloosa and took the children by force and brought them to Clay County, Missouri. Later, while Mr. Wood was hospitalized in the VA Hospital for several months as a result of taking the overdose of sleeping pills, Concetta again took the children to Iowa. The children were again returned to the home of Mr. Wood's parents and were staying there at the time of the divorce. The first time Concetta knew that the divorce had been granted and that custody of the children had been given to John, was a few months after the divorce when she came to see the children. They were with his parents at that time. She came back on several occasions in the first two years after the divorce to see the children, but she was made to feel very unwelcome. Thereafter she telephoned occasionally and asked about the children and how they were and he would indicate that they were "fine". These telephone conversations occurred before and after John's marriage. In 1967 Concetta wrote John and asked him if there was any way she could move to Clay County and if he would help her find a job and a place to stay. John did not bother to answer the letter, but his wife did, and she told Concetta that John had no time and no money to help her out and that she (Diana) wished that Concetta would stay away which Concetta did.

In early July, 1969, Concetta came to Liberty to see the children. She testified that the floor of the Wood home was dirty; that there were dirty dishes all over. She was allowed to take the children with her to the hotel where Julia complained of a toothache all night and couldn't sleep. Julia indicated that she had not been to the doctor and said, "Daddy says he doesn't have any money." Mr. Wood told Concetta that the girl did not need to go to the dentist because they were only baby teeth and they were going to fall out any time. David and Julia complained of their stomachs hurting them every time they ate something.

When Concetta asked to take the children uptown, the children were unable to find

clean clothes to wear and David said that he did not have any shoes. A social worker testified that later in that summer the Woods had obtained clothing from the Clothes Closet, a welfare distribution agency, and food from Surplus Commodities. She also indicated that the reason that she had suggested the Clothes Closet and the Surplus Commodities food program was that she felt that the children needed additional food and clothing.

Concetta's testimony, and that of her husband and two character witnesses established that she and her husband lived in a comfortable modern home and were well equipped to provide the children with the necessary love, affection, education, religious and moral training.

One of these witnesses had been the Homemaking teacher in the Oskaloosa Community School District for many years. She said Concetta "has a very fine reputation. People highly respect her, regard her. They attend church regularly."

Both respondent and her husband assured the court that in the event she was awarded custody of the children she would give up her outside employment and devote her entire attention to the home and to the proper upbringing of the children.

We have set out the evidence somewhat in detail. It shows beyond doubt that there has been a change in the situations of the parties involved since the decree of divorce was rendered.

As stated in the case of Smith v. Smith, Mo.App., 435 S.W.2d 684, 685: "The decision of a trial court in custody matters, when tested on appeal, comes weighed with the inference that the court properly exercised its discretion in determining the best interests of the child, and unless such discretion has been abused, or unless we can point to some reason for not deferring to the findings of the trial court or, of course, unless the court is convinced that the welfare of the child requires some other disposition, the decree should not be disturbed."

As said in Oliver v. Oliver, Mo.App., 325 S.W.2d 33, 39: "It requires no citation of authority to demonstrate that unless there is some compelling reason to the contrary, it is the policy of the courts to award the custody of children of tender years to their mother."

Appellant complains of the fact that the children will be removed to Iowa. In the case of Fago v. Fago, Mo.App., 250 S.W.2d 837, 841, the court said: "While generally speaking it is against the policy of the law to permit the removal of a minor child to another jurisdiction, the obstacle of non-residence is not an insuperable one and where it is clearly made to appear that the best interests of the child will thereby be subserved, the removal of the child will be permitted." (Citing cases)

In our opinion, it clearly appears from the evidence that it is for the best interest of the children that their custody be awarded to respondent, and that she be permitted to remove them to Iowa. In any event, it cannot be said that the trial court abused its discretion in so ruling.

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM:

The foregoing opinion by JAMES W. BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court and the judgment is affirmed.

All concur.