William EISSLER, Plaintiff-Respondent,

v.

Charlene EISSLER (Lovejoy), Defendant-Appellant.

No. 25535.

Kansas City Court of Appeals, Missouri.

May 17, 1971.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 7, 1971.

Laurence B. Silks, Silks & Silks, Kansas City, for defendant-appellant.

Robert F. Sevier, Sevier & Turnage, Liberty, for plaintiff-respondent.

DIXON, Commissioner.

The defendant mother has appealed from the trial court's ruling on her motion to modify awarding custody of three minor children to the plaintiff husband.

The parties were married January, 1961, and a divorce petition was filed by the husband in 1967. The wife was served September 21, 1967, and the case was heard as a default October 26, 1967. The wife filed her motion to modify in January, 1969, some 15 months after the divorce. It was heard on January 22, 1970, some 27 months after the divorce. Defendant's motion set up her remarriage and presently suitable home, her present ability to be with the children full time, and alleged that the father had separated the children and had allowed others to assume the role of parent and teacher to their detriment. Plaintiff filed answer and a motion to dismiss. Defendant, by leave of court, interlined a request for "particular times of visitation." The trial court heard evidence and denied defendant's request for change of custody, but granted visitation to defendant every other week from 10 a. m. Saturday until 5 p. m. Sunday, and from July 15 to August 1 each year.

We first take up respondent's contention briefed and argued that the wife is not an "aggrieved" party within the meaning of Rule 82.01 and V.A.M.S., Section 512.020. He contends that since the wife was permitted to amend her motion for a change of custody so as to ask for and receive a change in the rights of visitation, she prayed for alternative relief and received one of the alternatives she sought. Thus, since the relief she requested was granted, she is not aggrieved by the court's order. What respondent argues might be applicable if the alternatives were, in fact, each of them full and complete relief to the wife. The authority cited makes it plain that such alternatives must afford full, final and complete recovery or relief before the doctrine of the cases cited has any application. The wife's amendment was not for alternative relief but for definition of relief granted in the original decree. We rule that contention against respondent.

We have reviewed the whole record as is our duty under Rule 73.01(d), V.A.M.R. That review discloses the following factual background.

The parties separated August, 1967. The wife left and moved to a hotel. Three weeks later she was served with a divorce petition which charged her with the separation, slovenly housework and failure to prepare meals, and some general allegations as to temper and family quarrels. Thirty-five days after service, the husband took up the petition as a default, and a decree was rendered granting him the divorce and custody of the three minor children. The decree provided for the defendant wife to visit the children at "all reasonable hours and times."

The wife attempted at the hearing on the motion to testify as to her reason for leaving the family home. Objection was made and sustained as to this line of inquiry. The wife contends she was "forced" from the home and custody of her children; the husband contends she "abandoned" the children.

At intervals through the testimony, some references were made to the conditions prior to the divorce; and from these, we discern that the parties were married in 1961 when the wife was 16 and the husband was 20 years of age. The birthdates of the children are no place stated with

certainty. They were said to be 8, 7, and 3 at the time of the hearing. There are two boys and a girl. The oldest boy is in second grade and the other boy in first. The girl is not in school. Nor is it clear whether or not the wife was represented at the hearing on the petition for divorce. She claims she was.

It is apparent that the parties after the marriage lived in "the little house" owned by the paternal grandparents and that the wife left there August 25, 1967. It is likewise shown that, at the time of the divorce, the wife was living in a single room in a hotel and she had sought employment to support herself at that time. It further appears that she remarried in early 1968, that she and her present husband live in a four-bedroom, 2-bath home in Kansas City, Missouri, six blocks from a school, and that they have an infant child in the home born of the second marriage. The second husband is a railroad employee with earnings of $600 a month. The wife is not employed.

The father of the children still resides in the "little house" which is furnished to him rent free by his father. He is employed by his father at a wage of $60 a week. He takes his meals with his parents and the two boys remain in the grandparents' home during the school week. They do this in order to attend Kearney school instead of the Smithville School District where the father lives. The oldest boy required summer work to advance to the second grade. The father takes the girl home with him in the evening after supper and returns her to the grandparents in the morning. The father takes all of the children to his home Friday and Saturday nights, but prepares no meals at the home. The home of the father is some five or six miles from the residence of the grandparents. The father and the children regularly attend Sunday School and church.

Mr. and Mrs. Alfred Eissler, the grandparents, live on a 600-acre farm in the Kearney neighborhood of Clay County.

Mr. Eissler has sustained two heart attacks which have required his hospital confinement for two months on the first admission and for four to six weeks on the second. The grandmother has been in the hospital for a check up and takes medication daily for nerves. She is 54, as is her husband. The grandparents have afforded the children a comfortable home and have furnished the food except for milk since the divorce. They have taken one of the children as a dependent on their tax return.

The only substantial conflict in the testimony arises in connection with the mother's exercise of her right of visitation. She contends this has been limited and interfered with, while the husband claims she has not exercised it. The wife contends that the husband told her:

"* * * I could not take the children off of the property, that the Judge had told him personally that I could not take the children from the home.

THE COURT: He told you what?

That the Judge told him personally that the children could not be taken off of the property. He told me this on the phone."

The husband testified he had told his ex-wife she could not remove the children from his parents' home for visitation, but he contended this was because of her failure to return the children on time and that he had "asked Bob what to do about it."

The respondent argues that there is not such a change of circumstances shown as would warrant a changing of custody for the welfare of the children, and he cites in his points and authorities four cases: Birrittieri v. Swanston, Mo.App., 311 S.W.2d 364, Schumm v. Schumm, Mo.App., 223 S.W.2d 122, l. c. 126, Watkins v. Watkins, Mo.App., 230 S.W.2d 778, and Davis v. Davis, Mo.App., 254 S.W.2d 270. In his argument, he refers to other cases. Respondent points to Watkins v. Watkins, supra, as almost on all fours with this case.

We have examined that case and do not believe his conclusion is warranted. He admits in his brief that Watkins, supra, demonstrates "perhaps more substantial evidence of misconduct on the part of the wife with the man she later married, * * *" Counsel, by brief, asserts residence of the defendant and her present husband in separate rooms in a hotel during the period of separation warrants an inference of misconduct on her part. Despite counsel's innuendo, no impropriety is even suggested by the record before us. Watkins, supra, indicates a continued course of misconduct by the wife prior to the divorce, and her ultimate remarriage to the man with whom the misconduct occurred.

The husband also argues that the wife in this case never appeared at the divorce trial, nor found out what happened regarding the children's custody until four months after the decree. This comes with little grace when it was his objection sustained by the trial court which prevented the wife from testifying to the circumstances of her leaving the home and of her representation at the time of the trial. Not an iota of evidence in this record suggests that she knew when the trial was or even that her rights had been adjudicated. When questioned as to her knowledge of the trial, she said: "I had talked to the lawyer, I had, and found out that I was divorced, and he said that I got the children on Saturdays to take home with me."

A trial court should not be burdened with evidence of the "circumstances" at the time of the decree in every motion to modify. Where the parties disagree as to the circumstances at the time of the original decree, where the court is uninformed, or where the record is not clear, these circumstances should be established by evidence. A trial court and, likewise, a reviewing court could then intelligently and properly determine the issue of change of circumstances.

Respondent also cites Hurley v. Hurley, Mo.App., 284 S.W.2d 72, in the argument portion of the brief, although it is not mentioned in his points and authorities. It holds that the plaintiff had not sustained the burden of proof of change of circumstances. The evidence showed a continuing course of conduct which the reviewing court said was so vulgar and repulsive as to establish beyond any doubt that the plaintiff was a sex pervert. Not even the remotest inference arises from the evidence we are considering of any such misconduct on the part of this wife. This demonstrates the difficulty of applying generalized rules to circumstances as varying as those of actions by parents for the custody of their children. We have examined many cases decided in the appellate courts of this State and have concluded that it is futile to repeat general rules extracted from cases which have no factual parallel to the case we are considering.

Our research has disclosed two cases which we think are more nearly in point on the facts than any cited by either party. These are Swan v. Swan, Mo.App., 262 S.W.2d 312, and Wood v. Wood, Mo.App., 461 S.W.2d 286. The result reached and the reasoning applied are persuasive here.

In Swan, supra, the custody was granted to the paternal grandfather at a time when the mother was living in a single room in a rooming house and was not receiving any support from her husband. The father and child were living with the child's paternal grandparents. Thereafter the mother remarried and filed her motion to modify which was sustained, and the father appealed. The court held that a change of conditions had been shown and said (l. c. 315 of 262 S.W.2d), "Certainly a change in the mother's condition which now enables her to give the child the full love, affection, care and training of a natural mother is a change of condition of the child."

Wood, supra, also rules the issue of change of circumstances. The wife sought a change of custody with respect to three minor children which had been awarded to her husband at a divorce hearing at which

she did not appear. She left the State of Missouri, remarried, and then sought the custody of her children. She was without means at the time of her separation. The court, after setting out the evidence, said (l. c. 289 of 461 S.W.2d), "It shows beyond doubt that there has been a change in the situations of the parties involved since the decree of divorce was rendered." The action of the trial court in modifying the decree so as to grant the mother custody was affirmed.

■ In the recent case, Brand v. Brand, Mo.App., 441 S.W.2d 750, the trial court had awarded custody of the children to the defendant on his motion to modify. The mother appealed contending that there had been no change of conditions which would justify or require a change of custody. The court, recognizing the well established rule that the party seeking to modify child custody provisions of the divorce decree must show such change of circumstances, said (l. c. 753), " * * * that rule—or requirement—cannot be realistically applied in this case. The decree of divorce recites that the court heard evidence, and doubtless it did, but the record before us plainly shows that the 'joint custody' provision was a matter of stipulation and agreement between the parties, rather than an *adjudication upon contested facts.*" (Emphasis supplied.)

■ There is absolutely nothing in this record to indicate what the trial court considered at the time of the divorce in respect to the question of custody and what "conditions" he determined as requiring the custody of these children be placed with the father. If, as counsel for the respondent now contends, the court determined that the mother of these children abandoned them, counsel should not have interposed objections which kept from the record the facts upon which such a finding could rest. Such evidence could have been admitted by the court hearing the motion. In re Wakefield, 365 Mo. 415, 283 S.W.2d

467, 473. Draper v. Draper, Mo.App., 364 S.W.2d 27, 29.

So far as this record discloses, this mother left these children because of her marital difficulties and her inability to provide a home for them. She has now regained her ability to provide a home for these children, and such facts are a change in circumstances which will warrant a modification of the decree as to custody.

■ In accordance with Rule 73.01(d), supra, and Section 510.310(4), RSMo 1959, V.A.M.S., our review of this record on the principal contention of appellant must be *de novo*. The statute and the rule have been construed and paraphrased in many cases in Missouri, and from these, our duty to review is upon the whole record and with an obligation to make such findings as we may believe to be proper and appropriate, deferring to the findings of the trial court when he has made a determination with respect to credibility by the acceptance of one of the conflicting lines of testimony. Hurley v. Hurley, Mo.App., 284 S.W.2d 72, 75. When this record is reviewed in the light of that rule, little dispute on the facts is shown.

The only substantial conflict in the evidence relates to the issue of visitation, and likely enough, that pancake has two sides; but the quarrels of the parties with respect to visitation do not determine the issue with which we are confronted. The basic issue which we must decide is the best welfare of these particular children under these particular facts, and we do neither the children nor the law of this State any service by retreating to shibboleths to conceal or confuse the real decision that must be made.

■ This record presents the situation where good substantial grandparents have afforded a home for their son's children and have provided for them the necessities of life, and where the father has exercised, in effect, "visitation rights" in a separate domicile on Friday and Saturday evenings,

although it is true that, because he is the son of that household, he takes his meals there and associates with his children to the extent that his work permits him to do so. On the other hand, we have a mother who has a comfortable home, a husband who has an adequate income and who is willing to accept these children into his home. She will be present at all times to perform the function nature intended for the female to perform as to the very young. No evidence shows that the mother is unfit in any respect to have the care and custody of these children. The evidence does disclose that the father has naturally enough relied for much of the parental concern and the functions of parenthood upon his parents, and the record also discloses that they are both ill, the father more seriously, and that, at age 54, they are not of the normal age to be parents of children of tender years.

On balance of all these factors and making our own findings upon the record, we conclude that these children belong with their mother. It is argued in the briefs that we should not experiment, and cases have announced such a rule (Irvine v. Aust, Mo.App., 193 S.W.2d 336, 1. c. 342); but such admonitions do not control when we again revert to the determination we must make as to the welfare of these particular children in these particular circumstances. It is not in the light of human nature an "experiment" to place children of these tender years with their natural mother whom the law presumes is best able to care for these children, absent evidence of her inability or unfitness to perform her normal functions as the mother of the children. This mother is, on the record here presented, capable of the "acts of motherhood" which establish the basis for her "preferential right of custody." McPherson v. McPherson, Mo.App., 447 S.W.2d 791, 794.

We likewise feel, as did the trial court, that no parent should be deprived of as normal an association with his or her children as the facts may warrant.

We, therefore, feel that this court should provide for the care, custody and control of these children by a transfer to the mother with appropriate provisions concerning their visitation by the father; and to this end, we direct that the trial court shall enter an order transferring the care, custody and control of these children to their natural mother, and that the court shall further order that the natural father shall have the right of visitation upon two specified weekends of each month, beginning on Friday evening at an appropriate hour, and continuing until Sunday evening at an appropriate hour and that the father shall have a period of at least six weeks visitation during the summer months. During the specified periods, he shall have the care, custody and control of said minor children for such visitation purposes.

The record before us does not present evidence upon which we can intelligently determine the question of support for these children during the period of time that they are in the care, custody and control of their mother, and we, therefore, direct that the trial court hear evidence upon that subject and make such orders touching the question of support as may seem appropriate under such evidence. We further direct that since the two boys are presently in school in Kearney, Missouri, and since the daughter should not be separated from her brothers, that the effective date of this order concerning the transfer of custody be deferred until the end of this school year. Judgment is reversed and remanded for further proceedings in accordance herewith.

MAUGHMER, C., concurs.

PER CURIAM:

The foregoing opinion of DIXON, C., is adopted as the opinion of the Court.

All concur.