**Betty Sue LEATON, Plaintiff-Appellant,**

v.

**Homer R. LEATON, Defendant-Respondent.**

**No. 24903.**

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1968.

CROSS, Judge.

Plaintiff Betty Sue Leaton and defendant Homer R. Leaton are, respectively, the mother and father of Gregory Lynn Leaton, an infant male child born of their lawful marriage. On July 24, 1965, the Circuit Court of Linn County granted plaintiff a decree of divorce from defendant, awarded her custody of the child and accorded defendant reasonable rights of visitation. On October 6, 1966, defendant filed a motion to modify the decree alleging "that she (plaintiff) has been living with and representing herself to be the wife of Kenneth J. Smith for several months past, whereas, the said plaintiff is not married to the said Kenneth J. Smith; that notwithstanding that said plaintiff is unmarried she is, at the present time, approximately seven months pregnant; that neither the moral nor physical circumstances of the residence of plaintiff is conducive to the welfare and benefit of said minor child; that it is to the best interest of said child that the custody of said child be removed from the above named plaintiff and that this movant be granted to the care, custody and control of said child." On May 6, 1967, the trial court heard evidence on the motion and modified the original decree by awarding custody of the child to defendant and granting plaintiff the right to visit with him for two months each year, at Christmas on even numbered years and "at other reasonable times and places." When the order was entered Gregory Lynn was three and a half years of age. Plaintiff has appealed.

During their marriage, and at the time of their divorce, the parties lived in Brookfield. Following the divorce, plaintiff and the child continued to live in Brookfield, where she worked for the local newspaper. In January of 1966 plaintiff and the child moved to Milan where she also worked for the local newspaper. It is established by plaintiff's testimony that sometime in November or December of 1965 she started "going with" one Kenneth J. Smith, and by January of 1966 she was "going steady" with him, and that sometime in the fol-

Don Chapman, Jr., Chapman & Chapman, Chillicothe, for plaintiff-appellant.

Harry L. Porter, Marceline, for defendant-respondent.

lowing month she became pregnant by Smith. (At that time Smith was married to one E. K. R. The date of that marriage was January 15, 1966. It was annulled on September 6, 1966, by the Circuit Court of Linn County on grounds of Smith's fraud.) Plaintiff testified on the subject as follows: "Q. And then you went with him in January of '66 and got pregnant by him in February of '66? A. Somewhere around in there, I don't know exactly when. Q. Well, did you know he was married in January of 1966? A. Yes, I did. Q. And you still continued to go with him after his marriage? A. He wasn't going with her when I was going with him regularly. Q. But you did know he was married? A. I knew he was married but I knew he wasn't living with her."

In July of 1966, plaintiff, the child and Smith moved from Milan to Chicago, where plaintiff and Smith lived together and held themselves out as husband and wife, both under the name of Smith. On October 14, 1966, they were married, and three days later plaintiff gave birth to the child Smith had fathered. During the first month or six weeks of their residence in Chicago the Smiths had no permanent address. Thereafter, they moved to a basement apartment at 6219 Menard Street.

While plaintiff was living in Missouri, both at Brookfield and Milan, defendant experienced no particular difficulty in visiting with his son. After the child was removed to Chicago, defendant made unavailing efforts to see and visit with him. He made three trips to Chicago before he was able to see the child at all. He testified, "Well, I went to Chicago on two different occasions and called telephone numbers that I had and an address or two and they would tell me there was no one living there by that name, or letters would come back with no forwarding address. * * * I had phone numbers but there, but none of the numbers seemed to work." Plaintiff testified that the telephone was unlisted and admitted that she did not answer letters from defendant asking her to arrange for

the child to visit him. On the final trip to Chicago, in September of 1966, plaintiff located and went to the Smiths' apartment at 11:00 P.M. and was able to see the child for about 20 minutes. Plaintiff declined defendant's request to take the child to Missouri for a visit.

After defendant's trips to Chicago, plaintiff and her husband returned to Missouri with the child several times to see "her folks", who lived at Winnegan, in the Brookfield area. On those occasions plaintiff was reluctant to let the child visit his father and defendant saw the boy only twice while he was in Missouri. Defendant testified that he tried to obtain temporary custody of the child "whenever I found out she was back." He explains those efforts as follows: "Well, I would call up to her folks where she would be to see if I could see the boy and this last time that she was down she was down for two weeks before I got the boy and she said that she had brought the boy down solely for the purpose of her folks seeing the boy and that they was going back after the weekend. * * * I called up there (at the home of plaintiff's folks) to see if I could have the boy * * * And she told me that they were going back and that she had brought the boy down for the sole purpose of her folks seeing him and that if I wanted to see him I would have to come to Chicago." Commenting on defendant's efforts to see his son plaintiff stated that "if Greg means so much to him it looks like he could come to Chicago more often after him instead of everytime we hit Missouri just come up there and want to see him." On the occasion of the above mentioned "last time" she came to Missouri with the child (about two weeks prior to the hearing), despite plaintiff's expressed reluctance, defendant prevailed upon her to let him take the child for a visit. Defendant did not return Gregory Lynn as promptly as plaintiff claimed he had promised and she brought a habeas corpus action to effect his return to her custody. A hearing was held on April 22, 1967, but the record before us does not disclose that any judgment was

ever rendered in that proceeding. When the motion to modify the decree was heard on May 6, 1967, the child was in defendant's custody and presumably so remains.

Plaintiff testified that their four room basement apartment in South Chicago afforded adequate living quarters and playground facilities; that she is not employed but devotes her time to care of the home and the needs of her family, including Gregory Lynn; that the child has a good appetite and is provided with suitable food, plenty of clothes, toys and opportunities for recreation; that her "in-laws" live nearby and are willing to babysit; that the child is well adjusted and presents no disciplinary problem; and that her marriage with Kenneth J. Smith is a good, stable marriage. They plan to buy a house in Parsonville, Illinois. Smith testified that he was employed as a truck driver for Pacific International Express, Incorporated, earning $300.00 a week, sometimes more; that Gregory Lynn was adjusted with him "just like a son" and presented no disciplinary problems. He has been convicted of a misdemeanor crime, passing a bad check, and served a jail sentence of forty days. He was married twice prior to his present marriage with plaintiff.

Defendant remarried thirty-one days after he was divorced from plaintiff. His present wife has five children by a prior marriage, four girls and one boy, ranging in age from three to twelve years. Her former husband is deceased. At the time of the hearing she was carrying a child to be born of her marriage with defendant. Defendant still resides at Brookfield, together with his family, above described, in a three bedroom brick residence with a large kitchen, dining area, living room, den, full basement and two bathrooms. He is regularly employed by the C. B. & Q. Railroad Company as a brakeman earning $650.-00 to $800.00 per month. Defendant testified that Gregory Lynn had adjusted to the home life of the other children and that there had been no difficulty experienced with him as a member of the household.

Mrs. Leaton (defendant's present wife) testified that she was willing to take the responsibility of the care, custody and control of Gregory Lynn, with the affection, love and care she would give her own children. Defendant's parents reside in Brookfield where they have lived all their lives. Defendant's father is a railroad engineer—also employed by Burlington. Both grandparents expressed their natural affection for Gregory Lynn and their willingness to stand by and assume responsibility for his care whenever needed.

In a single point plaintiff admonishes that this court "should review the entire record and hear the case de novo" (Civil Rule 73.01 (d)), that this case should be decided "only as the best interests of the child itself may seem to require," and that "It is best for a child of tender years to be with his mother." The substance of the point as a complaint of error is expressed as follows: *"Even though the Plaintiff's conduct has been questionable in this case,* there is no evidence that she ever neglected her child nor is there evidence of probable future misconduct on the Plaintiff's part, and the trial court's judgment is thereby against the greater weight of the evidence." (Italics supplied.)

It is hornbook that an order of child custody will be modified if it be shown by new facts that conditions have changed since the original decree was rendered and that the best interest of the child requires that the custody be changed. The burden of such showing rests upon the party seeking the modification. See Mo.Digest, Divorce, ☞303. Defendant, as the moving party in this proceeding, has at least satisfied his burden insofar as it requires a showing of change in the conditions surrounding the persons involved. Remarriage of both parties and the unauthorized removal of the child from the territorial jurisdiction of the court have effected changed conditions of very substantial materiality. The only question left for judicial determination is whether the best interests of Gregory Lynn will be served by an award of his custody to his father, or to his moth-

er, neither of whom, as such "shall have any right paramount to that of the other parent", Section 452.120 V.A.M.S.1959.

It is argued on plaintiff's behalf that despite her "indiscretions", there is no evidence that she had ever neglected her child, and that the record affirmatively shows she had dutifully cared for him and provided him with maternal love and affection. Plaintiff admits that the defendant father will provide an adequate home for the child, but submits that as a railroad trainman he is necessarily absent from home while on duty, and that a custody award in his father's favor would actually entrust the child's upbringing "to a second wife", in a home where five other children would be "competing" for her affection and care; that he would be "lost in the shuffle". Plaintiff insists that as the child's natural mother she will have and devote more time to his care and needs. Defendant questions the stability of the Smith household and the moral fitness of plaintiff to have custody of the child, and suggests that "if plaintiff were awarded custody of the child, the youngster would necessarily be in a home in which the present husband of plaintiff would be the head of the house and the record discloses that his reputation and character leaves much to be desired."

As courts have frequently stated, there is no universal formula or absolute rule by which it can be determined which of two contesting parents should be given custody of a child, but each case must be judged upon its own facts. Harwell v. Harwell, Mo.App., 355 S.W.2d 137. It is true, as plaintiff reminds us, that courts have said that "if all else be equal," a child of tender years should be given into the custody of the mother. Keith v. Keith, Mo. App., 95 S.W.2d 669. However, this rule is not an inflexible one. As observed in Garbee v. Tyree, Mo.App., 400 S.W.2d 193, "All things never are exactly equal", and as stated in M_____ L_____ v. M_____ R_____, Mo.App., 407 S.W.2d 600, "(A) profusion of cases convincingly demonstrates that the courts are not reluctant to entrust children

into their father's care and custody, where the best interests of the children will be served thereby." In the case last cited the court commented that a five year old boy whose custody was involved "is verging on an age at which the guidance, direction, supervision, companionship and love of an understanding father will be most needed and beneficial." Also see Davis v. Davis, Mo. App., 354 S.W.2d 526.

Although the trial court has made no specific findings of fact, the decree awarding the child's custody to defendant carries within itself the implication that the court has found that it was in the best interest of the child that his custody be given to his father. That finding upon the ultimate issue in the case necessarily turned upon disputed questions of fact involving the credibility of the witnesses. As an appellate court it is our duty to defer to the trial court's conclusions arrived at, in view of that court's opportunity to hear and evaluate the witnesses' testimony and to observe their demeanor and appearance. Furthermore, as this court said in Tootle v. Tootle, Mo.App., 329 S.W.2d 218, "There is an additional well settled rule 'that the findings of the trial court in matters involving the custody of a minor child of divorced parents, while not binding upon the appellate court which must review the record for itself, are nevertheless not to be lightly disturbed, and will be deferred to unless the appellate court is firmly convinced that the welfare of the child requires some other disposition.' Lutker v. Lutker, Mo.App., 230 S.W.2d 177, 179." Other cases adhering to this rule include Harwell v. Harwell, Mo.App., 355 S.W.2d 137, Wood v. Wood, Mo.App., 400 S.W.2d 431, Benjamin v. Benjamin, Mo.App., 370 S.W. 2d 639, Irvin v. Irvin, Mo.App., 357 S.W.2d 254 and P_____ D_____ v. C_____ S_____, Mo.App., 394 S.W.2d 437. Also see numerous cases cited in Missouri Digest, Divorce, ☞312.6(8).

We are not convinced by our review of the record that the welfare of the

child involved in this case requires a different disposition of custody than the trial court has provided. We are unwilling to say that the findings of that court are not supported by substantial, credible evidence. On the contrary, we believe they are in accordance with the greater weight of the evidence and that the trial court did not abuse its discretion in awarding the child's custody to his father. We approve the trial court's findings on this issue and adopt them as our own—not only in deference thereto but from our independent conclusion based on the facts disclosed by the record. The judgment is not clearly erroneous and is therefore affirmed.

All concur.