William Paul HUGEBACK, Plaintiff, Respondent,

v.

Elaine Lois HUGEBACK, Defendant, Appellant.

No. 33212.

St. Louis Court of Appeals.

Missouri.

July 15, 1969.

Vernon C. Oetting, Ernest L. Keathley, St. Louis, for defendant-appellant.

Shaw, Hanks & Bornschein, Clayton, for plaintiff-respondent.

DOWD, Judge.

The plaintiff, William Paul Hugeback, filed suit against his wife, Elaine Lois Hugeback seeking a divorce with a count in equity asking for custody of the two minor children in the event a divorce was denied. Defendant filed a cross bill for divorce and also a count in equity asking for custody of the minor children in the event a divorce was denied.

Before the conclusion of the evidence, the court announced that he "might advise a child custody study by the Juvenile Court," and asked the plaintiff, the plaintiff's mother, and the defendant to "cooperate * * * one hundred percent" with the juvenile worker.

There was no objection to the child study by either the plaintiff's attorney or the defendant's attorney. In fact, defendant's attorney asked that special arrangements be made to interview defendant's mother before she left for Texas.

After a trial of the issues raised by the pleadings, the court denied both plaintiff and defendant a divorce and awarded plaintiff the general custody of the children. The court made a provision for the defendant to have reasonable visitation and temporary custody of the children.

Plaintiff did not appeal. The defendant has appealed the judgment denying her a divorce and awarding the general custody of the children to the plaintiff.

The parties were married May 7, 1962 and after one prior separation, were "finally separated" on March 28, 1967. There were two children born of the marriage: Beverly Ann, August 11, 1963 and William Paul, II, July 15, 1965.

Plaintiff's petition was based upon indignities. The misconduct of the wife, among other things, was alleged to have included associating with other men, deserting plaintiff and the children, remaining away from home until late at night and spending a large amount of time in taverns and neglecting the children.

Plaintiff's count in equity alleged that the children were in his custody since the separation and were receiving proper care by plaintiff and plaintiff's mother in a stable home. Plaintiff further alleged misconduct by defendant and neglect of the children.

The defendant's cross bill was also based upon indignities and the misconduct of the husband, among other things, was alleged to have included a violent temper, the use of vile language towards plaintiff, beating plaintiff, and staying out late at night without explanation.

The husband testified, along with other witnesses, to the misconduct of the wife and adduced evidence to the following effect: Defendant moved out of their home on March 28, 1967 and left him and the two children and did not attempt to take the two children with her; defendant never inquired about the children or attempted to visit the children during the two months following the separation; defendant did telephone shortly after the separation but plaintiff's mother hung up on her. Plaintiff saw his wife in a tavern with her arms around another man and saw his wife with other men on other occasions. There was further testimony that defendant was seen every Friday and Saturday night in a tavern with Harold who played a guitar in the band and that defendant was also seen in a tavern with Butch. Defendant stated that it was not wrong to go out with Harold while married. Defendant was seated on the lap of a man, with her arms around his neck in a parked automobile. Defendant was "feeling good" from intoxicating liquor and defendant was in an intoxicated condition on two other occasions and had to be carried off the Admiral boat in a drunken condition. Defendant's reputation for truthfulness and moral behavior is "pretty bad."

Plaintiff came home and found that defendant left their three and a half year old daughter unattended, and the child was crying and the defendant arrived home thirty minutes later. On another occasion plaintiff's mother visited the home of plaintiff and defendant and found the boy in the crib and the defendant not home and the defendant came home thirty minutes to an hour later.

Defendant stayed out late at night and did not return home until after 4 a. m. on one occasion and until after 1:45 a. m., on another occasion. Defendant threatened to

stab plaintiff with a butcher knife. Since the separation the children have lived with plaintiff and his mother and her husband; the home they live in is owned by his mother and her husband and is on a three and one-half acre lot and has three bedrooms, bath and a half and a full basement. Since plaintiff and his mother have had the children, their health has improved and they have gained weight; at first the daughter was nervous and screamed and cried at night and a doctor put the daughter on tranquilizers; the daughter now sleeps well and is no longer on tranquilizers. Before the separation, plaintiff's mother took care of the children on Friday evening and on occasions would keep them overnight.

Defendant was called as a witness in plaintiff's case. She testified she went out with a Mike Radford and was kissing him in an automobile. This occurred after the separation.

In support of her cross bill for divorce and her count in equity asking for custody of the children, defendant and other witnesses adduced evidence to the following effect: Defendant performed her duties as a wife and took care of the children. Plaintiff threatened to kill defendant and her family. When defendant returned from the hospital after giving birth to their daughter, the plaintiff turned on the gas and closed the windows and would not allow defendant or the baby to leave. Plaintiff had a bad temper and had "tantrums" twice a week. Plaintiff beat defendant; threw a flashlight at her; cursed her; threw a Christmas tree at her; threw a lamp and a pot of ravioli at her; hit her in the eye; hit her in the head with a glass; pulled a chunk of hair out of her head; and, knocked out her false tooth.

Plaintiff threatened to hit defendant's mother with a jack. Plaintiff threw a bowl of corn flakes at defendant's mother, and he came home in a drunken condition. Plaintiff pushed defendant into the bushes. Plaintiff locked defendant in a closet. On the day of the separation, plaintiff beat defendant and told her she had to leave or he would kill her.

On cross examination defendant admitted keeping company with Harold before the separation and that she kissed and embraced him. She had dated Michael seven or eight times and dated Harold as many as fifteen times. Before the separation she stayed in a tavern until 3 a. m. or 4 a. m. and had three or four highballs.

Defendant's mother has been a civil service employee of the federal government for ten years and has worked for about one year in Texas; however, if defendant was awarded custody of the children, she would transfer her job back to the St. Louis area and help defendant with the children. Defendant's sister, who has four children and who lives six houses from her mother's home would help baby sit. Defendant would move the children into the home of her mother in St. Louis County when the tenant moved. If defendant got custody the children would be sent to a nursery school or a "proper" baby sitter would be employed or defendant's mother would quit her job with the government and take care of the children.

Dr. Caldwell Hamilton, the children's doctor, testified that he had seen Beverly in February, 1967 and William in April, 1967 and found nothing abnormal about them and that he had not prescribed tranquilizers for them.

A woman testified that she kept company with plaintiff and had intercourse with him twice a week and he was the father of her illegitimate child. Plaintiff denied that he had kept company with this woman but she had dated a friend of his. Plaintiff also testified that she never told him he was the father of her baby. He further testified in rebuttal and denied the misconduct developed in defendant's case.

Defendant has raised three points on this appeal: (1) The court erred in failing to find that defendant was the innocent and injured party and as such was entitled to a

decree of divorce; (2) that the court erred in failing to find that the defendant was entitled to the custody of the minor children; (3) the court erred in ordering a child custody study without making the study available to defendant.

Since this is a divorce action, it is our duty to review all the evidence and reach our own conclusion as to the proper judgment to be entered. However, great deference should be given to the finding of the trial court, who had the parties before him and was in a much better position to judge their credibility than is an appellate court. Langshaw v. Langshaw, Mo. App., 331 S.W.2d 15; Cody v. Cody, Mo. App., 233 S.W.2d 777, and Dunlap v. Dunlap, Mo.App., 255 S.W.2d 441.

Applying this rule to the record in this case, it is obvious that the court did not err in refusing to award either the plaintiff or the defendant a decree of divorce. The record clearly established that neither the plaintiff nor the defendant was the innocent and injured party. Both were guilty of serious misconduct. Inasmuch as only the defendant has appealed, we will direct our attention to the evidence as it establishes the misconduct of defendant. The evidence shows that the defendant had associated with other men during the marriage and had publicly kissed and embraced another man and had frequented taverns to the early hours of the morning. The evidence also established that she had become intoxicated in public and had to be carried off the Admiral boat.

In Day v. Day, Mo.App., 433 S.W.2d 52, 54 the court pointed out that our Supreme Court in 1869 in the case of Hoffman v. Hoffman, 43 Mo. 547, construed the counterparts of what are now Sections 452.010 and 452.090 V.A.M.S. and declared, " 'If both parties have a right to divorce, neither party has.' " The court in the Day case further stated: "Inherent in this basic rule is the requirement a party seeking relief must be 'innocent' of any misconduct which would give his or her spouse cor-

responding grounds for divorce. * * *" The appellate courts of this state have consistently followed the standards set down in the Hoffman case for over one hundred years. Mo.Dig., Divorce, ☜55; Simon v. Simon, Mo., 248 S.W.2d 560; Ezell v. Ezell, Mo.App., 348 S.W.2d 592; Gregg v. Gregg, Mo.App., 416 S.W.2d 672. It was held in Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483, 486 that making proof of innocence an affirmative burden of the plaintiff [here it would be the defendant] was neither more nor less than an application of the equitable doctrine of "clean hands" to a divorce action.

In applying the "clean hands" doctrine it matters not whether the misconduct occurred during cohabitation or after the separation. Day v. Day, supra, 433 S.W.2d 54; Cherry v. Cherry, 225 Mo.App., 998, 35 S.W.2d 659, 661.

The record shows that the defendant did not carry the burden of establishing that she was the innocent party. The evidence shows that she was guilty of misconduct before and after the separation. The record also shows that the misconduct of plaintiff probably outweighed the misconduct of defendant. However, this is not the test. Defendant must still establish that she was the innocent party. Defendant failed in this burden.

The defendant next contends that the court erred in failing to find that defendant was entitled to the custody of the minor children. The court's findings, judgment and decree provided, in part, as follows: " * * * for the best interest and welfare of the children, the care, custody and control of the two (2) minor children is hereby awarded to the Plaintiff." The court then made provisions for the defendant to have reasonable visitation and temporary custody of the children.

The test to be applied in the awarding of custody of minor children is the best interests and welfare of the children. While it is true that the record

**28**

established misconduct by both plaintiff and defendant and that neither were entitled to a decree of divorce, the trial court had to determine the issue of custody based upon the best interests of the children. The findings of the trial court in matters involving the custody of minor children in divorce cases, while not binding on the appellate court which must review the record for itself, are nevertheless not to be lightly disturbed and will be deferred to unless the appellate court is firmly convinced that the welfare of the children require some other disposition. Leaton v. Leaton, Mo.App., 435 S.W.2d 408, 412 [6], Lutker v. Lutker, Mo.App., 230 S.W.2d 177, 179.

The record here shows that the two minor children have been in the custody of plaintiff and his mother since March 28, 1967. The home is on a three and one-half acre lot, has three bedrooms and bath and a half. The record further shows that plaintiff's mother had taken care of the children every Friday and on weekends during the marriage. The evidence also shows that the health of the children has improved since they have been in the custody of plaintiff.

Besides the specific evidence of misconduct which established defendant was not the innocent party, there is other evidence which also goes to defendant's fitness to have custody of the children. The record showed that defendant left the children unattended on occasions and remained away from the home until the early hours in the morning.

The evidence offered by defendant and her witnesses regarding provisions for taking care of the children lacked certainty and definiteness. Defendant's evidence showed that it would be necessary for defendant's mother to transfer her job from Texas to St. Louis County and to employ a baby sitter and to regain possession of her mother's home in St. Louis County. As opposed to this testimony, plaintiff provides a stable home with his mother and him taking care of the children.

In awarding custody of the minor children no single consideration is more important than the home environment in which they will live. Rogers v. Rogers, Mo.App., 430 S.W.2d 305, 311. The courts are not reluctant to entrust children into their father's care and custody, where the best interests of the children will be served thereby. M_____ L_____ v. M_____ R_____, Mo.App., 407 S.W.2d 600, 603 [5] and Jaros v. Jaros, Mo.App., 395 S.W. 2d 217, 220 [5].

Our own independent review of the entire record convinces us that the trial court's findings and order in granting custody of the children to plaintiff were correct and proper.

The defendant contends in Point III that the court erred in ordering a child study and not making the study available to the defendant. The court announced that a child study would be made by the Juvenile Court. This study was to be made after the conclusion of all the evidence. Neither attorney objected to the study. Defendant's attorney asked that special arrangements be made with the Juvenile Court to interview defendant's mother before she returned to Texas. The record is devoid of any showing that the study was ever made and devoid of any showing that it played any part in the court's decision. No reference is made to a study in the court's findings, judgment and decree. This same contention was rejected in Benjamin v. Benjamin, Mo.App., 370 S.W.2d 639, 644 [15] which held that even though the consideration of a child study may very well be error, that it was too late to raise this point in a motion for a new trial. That court further held that this contention was without merit where there was absent any showing that the court based its decision on the strength of the report. We therefore find this point without merit.

For the reasons given the judgment of the trial court is affirmed in all respects.

WOLFE, P. J., and BRADY, J., concur.