**Glen GARRETT, Plaintiff-Respondent,**

**v.**

**Louise GARRETT, Defendant-Appellant.**

**No. 9033.**

Springfield Court of Appeals,
Missouri.

Feb. 11, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied March 3, 1971.

Application to Transfer Denied
April 12, 1971.

Almon H. Maus, Monett, for plaintiff-respondent.

O. J. Taylor, Neale, Newman, Bradshaw & Freeman, Springfield, for defendant-appellant.

TITUS, Presiding Judge.

In October 1968 the Circuit Court of Barry County awarded the 32-year-old defendant-wife a divorce on her crossbill and the custody of the four children born of the marriage. The 37-year-old plaintiff-husband was granted reasonable visitation privileges and temporary custody of the children on alternate weekends. When the decree was entered, plaintiff was living in a rural area near Purdy, Missouri, and now resides there; defendant and the children were residing in nearby Butterfield but defendant, as was her known intention at the time of the divorce, soon moved with the children to Springfield where she was enrolled as a college student and is still so engaged. Plaintiff remarried the latter part of March 1969 and in October of that year filed his motion to modify the decree to give him major custody of the children. Defendant countered with a like motion seeking to eliminate plaintiff's weekend custody privileges and to restrict his visitation rights with the children to the City of Springfield. The motions were tried together on March 13, 1970, at which time the children were 14 (a boy), 12 (a girl), 6 (a boy), and 3 (a girl) years of age. The court nisi entered judgment modifying the initial decree in several respects. Of particular concern here is that part of the modifying order which transferred custody of the two younger children to plaintiff. Defendant's after-trial motions were denied and she appealed.

Plaintiff had alternate weekend custody of the children following the October 1968 divorce until June or July of 1969, at which time plaintiff's privileges in this respect were terminated by defendant's own decision. There were "difficulties all along" with respect to plaintiff's custody and visitation rights. Plaintiff testified there never was a time that he exercised these privileges "without some unpleasantness" and that defendant "without exception" would be "mad" and threaten that plaintiff "wasn't going to get the kids any more." Defendant agreed that she had told the plaintiff he had forfeited all his rights to the children, that the children had no father and that plaintiff had no children, but denied, as plaintiff had asserted, that such statements had been made in the presence of the children.

According to the plaintiff, the four children were happy to be with him at first but by Christmas of 1968 his relationship with the two older children "wasn't as good as it had been. They were so dis-

tant." Defendant vowed the children were upset by plaintiff's visits, that the two older children were "not at all satisfied with the [temporary custody] arrangement," that she told "them they were not compelled" to go with their father and "never made any attempt" to explain to the children that they should go with the plaintiff. Defendant did not advise the plaintiff when their youngest son suffered a broken shoulder, and stated that she made the decisions concerning the children's schooling and their medical and dental needs without consulting the plaintiff. Shortly before Mother's Day in 1969, plaintiff gave the children some money to assist them in purchasing defendant a gift for the occasion; when defendant became aware of the matter she returned it by mail to the plaintiff. Also, when plaintiff learned that defendant's sister had died he called her and offered to keep the children. Defendant refused the offer and, instead, arranged for them to stay at the home of plaintiff's business partner during this period.

Defendant admitted she "knew that [she] was not following the decree of the court" in refusing to let the plaintiff have custody of the children on alternate weekends after the summer of 1969. Subsequent to this decision by defendant, plaintiff continued to visit with the children in Springfield on an average of once a week and "there was an occasion or two" when defendant permitted plaintiff to take the children from the house "for dinner or to the fair," but thereafter plaintiff was not allowed to take the children out of the home. Plaintiff said his visits with the children in defendant's house, with one exception, was while "she was there" and "[o]n most occasions, in the same room," resulting in "a strained atmosphere." Finally, two weeks before the trial, as plaintiff recounted, defendant "decided that I could see [the children] only on Friday nights and I couldn't see them any other night than that, and only if I gave her a week's notice in advance, and only at her convenience." Defendant's only denial of this was that she had not imposed a week's notice as a condition for plaintiff seeing the children in her home.

As the reader might suspect, the foregoing is but a sampling of the evidence presented in the cause. Legal opinions in child custody cases are little else than chronicles of human misfortune, and we have no disposition and see no need to rehash the entire testimony of every witness merely to record another woeful and prolix installment to that wearisome serial where adult intolerance triumphs over parental love.

We would be the last to tilt with the platitudes of motherhood penned by dewy-eyed jurists or to deny the soundness of the curial saw that all things being equal, children of tender years should be given into the custody of the mother. Harwell v. Harwell, Mo.App., 355 S.W.2d 137, 143(9). This precept, gutted into most every opinion on the subject, is not based upon any superior right of the mother [Edrington v. Edrington, Ky., 459 S.W.2d 141, 142(1)], for our statute (§ 452.120 RSMo 1969, V. A.M.S.) provides that " [i]n all proceedings * * * in which shall be involved the right to the custody and control of minor children, * * * neither parent as such shall have any right paramount to that of the other parent, but in each case the court shall decide only as the best interests of the child itself may seem to require." Smith v. Smith, Mo.App., 435 S.W.2d 684, 687(6); Markham v. Markham, Mo.App., 429 S.W.2d 320, 323(7); J—— G—— W—— v. J—— L—— S——, Mo.App., 414 S.W.2d 352, 360(5). The rule giving the mother preferential right to custody, is considerably softened by the realization that "all things never are exactly equal" (Garbee v. Tyree, Mo.App., 400 S.W.2d 193, 199), and is predicated upon the acts of motherhood—not the fact of motherhood. McPherson v. McPherson, Mo.App., 447 S.W. 2d 791, 794(5). Likewise, the rule will yield if the welfare of the children demands it, because this is not a presumption of law but

a simple fact of life gleaned from human experience [McCallister v. McCallister, Mo. App., 455 S.W.2d 31, 34(2)], and the courts are not timid in entrusting children into their father's care and custody when their best interests will be served thereby. Hugeback v. Hugeback, Mo.App., 444 S.W.2d 23, 28(9); J— G— W— v. J— L— S—, supra, 414 S.W.2d at 359–360(4); M— L— v. M— R—, Mo.App., 407 S.W.2d 600, 603(5); Jaros v. Jaros, Mo.App., 395 S.W.2d 217, 220(5).

Although we do, it is not necessary to repeat the legal clichés that custody rights are not meted with a design to reward one parent or punish the other [Wood v. Wood, Mo.App., 400 S.W.2d 431, 436(5)], that each child custody case must be judged on its own facts [Leaton v. Leaton, Mo.App., 435 S.W.2d 408, 412(3)], and that parental rights are secondary to determining what will best serve the welfare of the children, which is always our primary concern. Mondy v. Rasch, Mo.App., 437 S.W.2d 698, 702(1); Endicott v. Endicott, Mo.App., 435 S.W.2d 388, 390(1). There is no disputing defendant's claim that courts have the authority to enforce custody decrees through contempt proceedings [Hachtel v. Hachtel, Mo.App., 291 S.W.2d 201, 207(6); Perr v. Perr, Mo.App., 205 S.W.2d 909, 913(6)], but we do not agree that courts are restricted to these methods to enforce decretal rights of visitation and custody intended for the best interests of children. If a court entrusts one parent with major custody of minor children and that parent's conduct with respect thereto deprives or materially abrogates the other parent's custodial and visitation rights granted by the decree, the court is not limited to mere punitive measures but may modify the decree to assure performance of those portions of its judgment designed to promote the welfare of the children. Asbell v. Asbell, Mo.App., 430 S.W.2d 436, 439(9), and cases there cited. "[I]nterference with or deprivation of decretal rights of visitation or custody is a factor properly to be considered in determining the welfare of a child * * *, 'not for the purpose of punishing [the disrespectful or disobedient parent]—but rather for the purpose of measuring her [or his] mental attitude toward law and order,' for '[a] person with such little regard for constituted authority can hardly lay claim to being an ideal person to direct the training and upbringing of a young child.' * * * [S]uch interference with or deprivation of decretal rights constitutes a changed condition which may justify and require a modification" [P— D— v. C— S—, Mo. App., 394 S.W.2d 437, 445–446(11, 12)], and a divorced wife's defiance of custodial orders is a proper matter to be considered in determining whether custody should remain in her. Foster v. Foster, Mo.App., 300 S.W.2d 857, 869(7).

True, as defendant contends, no charges were made or proved reflecting upon her personal conduct or that she had been neglectful of the physical well-being of the children. But evidence was adduced which tended strongly to prove that, owing to a feeling of intense bitterness defendant entertained toward plaintiff, she studiously and repeatedly violated the provisions of the decree with full and admitted knowledge that she was doing so. Defendant agreed she had told the plaintiff that he had no children and had forfeited his rights to the children. Since the trial court found for plaintiff (at least insofar as the two younger children were concerned), we assume it believed plaintiff's testimony that defendant repeatedly uttered those abusive statements in the presence of the children. JD v. MD, Mo.App., 453 S. W.2d 661, 666; Snip v. City of Lamar, 239 Mo.App. 824, 837(12), 201 S.W.2d 790, 798(12). When the parent who has custody makes disrespectful and abusive statements against the other parent and attempts to wean the children away, the decree can be properly modified and custody changed [Chilcutt v. Baker, Mo.App., 384 S.W.2d 854, 860–861; R— v. E—, Mo. App., 364 S.W.2d 821, 828; S— v. G—, Mo.App., 298 S.W.2d 67, 76–77(13)], even

though the condemned result is not intended by the offending party. P—— D—— v. C—— S——, supra, 394 S.W.2d at 445(10).

The parties had entered into a "Pre-Divorce Agreement" containing custody and visitation provisions similar to those pronounced in the divorce decree. This contract would be of no concern here except that defendant argues she did not contumaciously violate the court's decree because, having been born and reared in Holland, she did not understand "our ways and our court procedures" and in refusing plaintiff custody of the children, she was merely breaching "an agreement between my husband and me." It seems to us that such an argument deserves but scant consideration in face of defendant's acknowledgment that she knew she was not following the court's order when she denied plaintiff his custody rights. Irrespective of the place of defendant's birth and upbringing, she should be aware that court judgments may nowhere be reversed by her own ex parte decisions, and that intentional violations of solemn contractual promises do not merit acclamation in any civilized country. Furthermore, overt female performances designed to expunge fathers from the lives of their begotten children are not condoned acts of motherhood under any human standard of which we are aware.

No one questions the wisdom of the trial court in leaving the custody of the two older children with the defendant, nor seriously doubts that their affections for their father have been so seriously alienated that it would be unwise to transfer their custody to him. As indicated by the reasons given for its judgment, the trial court believed that before defendant's bitterness towards the plaintiff and deep resentment of his remarriage should be permitted to further permeate the feelings of the two younger children and permanently alienate their affections for plaintiff, it would be to their best interests and welfare that their custody be placed with the father, subject to reasonable visitation by the mother. In dealing with issues relating to the care and custody of minor children of discordant parents, there is confided to the trial court a wide discretion in adapting its orders to varying circumstances and conditions with the view always to conserving the highest and best interests of the children, and the court has discretionary power of splitting the custody of children between parents if that will better serve the children's welfare. J. v. E., Mo.App., 417 S.W.2d 199, 203–204(8). Findings of a trial court in such matters, although not binding on an appellate court which must review the record for itself (Civil Rule 73.01(d), V. A.M.R.), are nevertheless not to be lightly disturbed and will be deferred to unless the appellate court is firmly convinced the welfare of the children demands otherwise. Leaton v. Leaton, supra, 435 S.W.2d at 412(6); Moore v. Moore, Mo.App., 429 S. W.2d 794, 796(4). Our review of the record, consideration of the commendable briefs and arguments of counsel and perusal of numerous reported opinions on the subject, leads to the conclusion that the discretion of the trial court was wisely exercised in this cause and that its judgment should be affirmed. It is so ordered.

STONE, and HOGAN, JJ., concur.