Edna Roberta SUDDARTH (Laxton),
Appellant,

v.

Donald C. SUDDARTH, Respondent.

No. KCD 26682.

Missouri Court of Appeals,
Kansas City District.

Nov. 4, 1974.

Robert F. Sevier and William E. Turnage, Liberty, for appellant.

John R. Hutcherson and Philip D. Gettig, Kansas City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

PRITCHARD, Presiding Judge.

The trial court refused to modify a decree to grant custody to appellant mother of six children born of the marriage of the parties. Appellant claims the judgment was in conflict with the evidence and was a manifest abuse of judicial discretion; that the trial court erred in refusing to ad-

mit in evidence the circumstances that existed at the time of the original decree even though it would go back to the date of the original divorce; and that the trial court erred in taking into consideration matters outside the record.

On the day the decree of divorce was granted, February 9, 1972, there was filed in court also the property settlement agreement of the parties. It provided that respondent was to have custody of the six children, and the decree followed the agreement, and appellant was given certain visitation rights. Appellant's motion to modify the custody decree alleged that the custody was granted to respondent "because of plaintiff's financial inability to care for said children"; that she subsequently remarried and was presently able, with the assistance of child support from respondent, to care for the minor children. She alleged further that respondent was unable to provide a satisfactory home and proper care for the children in these respects: He led an active social life and spent little or no time with the children; his parents' two-bedroom home in which he resides is totally inadequate for nine persons to live; respondent and his parents all work which requires that the children be sent to many different baby sitters the majority of the time; he neglected the medical and dental needs of the children; he failed to provide eyeglasses for one son which resulted in his school grades dropping; he failed to take the children to church regularly. Appellant further alleged that she presently resides in a new four-bedroom home, and asked that because of changes of conditions, the order of custody of the six minor children be modified by transferring them to her, with child support.

■ Appellant was asked why she did not retain custody of the children, and an objection to the question was sustained because "That goes to the merits of the original hearing, and we have to go into the change of circumstances now." There was no offer of proof as to the matter and there is therefore nothing preserved for review. There is no way of knowing whether any testimony elicited would shed further light on the circumstances at the time of the divorce which would in turn bear upon the allegations of changed circumstances at the time of this hearing. There is no inherent matter of great public policy here as was in the adverse ruling as to the paternity of a child in Rasco v. Rasco, 447 S.W.2d 10 (Mo.App.1969), which was a compelling reason to invoke the plain error rule, Rule 79.04, V.A.M.R. The contention that the court should have received the evidence of original circumstances, in the limited posture of the question asked, will not be reviewed under the plain error rule, and the point is thus ruled against appellant.

Appellant did testify that she had remarried, and that she and her husband resided in a very large house, with four rooms downstairs, and two bedrooms upstairs with a potential third bedroom which they intended to finish. The house was on an acre of ground in Lawson, Missouri.

As to respondent's facilities, appellant testified that the children lived with him and his parents in an older, basically two bedroom, home, wherein nine persons resided. Before respondent moved in with his parents, the children were kept at nine different places, some in non-modern farm houses, with a young girl to look after them. Appellant had the children every two weeks at which times respondent would pick them up to attend church and then would return them to her. He agreed then that appellant could take the children to church because she was not getting to spend enough time with them. She noticed that one son had a bad toothache and she went ahead and provided him with dental care. Another son had a bad injury to his head which did not look as though it had been cared for by a physician. One son with poor eyesight went without glasses, which were misplaced, for six months before the divorce and for a year afterwards. Respondent, after the present motion was

filed, went ahead and got glasses for the son. Appellant testified further that the children were very unruly and tempermental. On cross-examination appellant acknowledged that she and her husband worked in their business of a lunchroom and laundromat from nine in the morning to nine at night, other than on weekends when she had the children. If she received the custody of the children she intended to stay home and care for them.

Appellant's sister, Delores Geisinger, and her husband testified that respondent and the children stayed with them from December until the last part of May after the divorce. Mrs. Geisinger had the care of the children, doing laundry and preparing the meals. Respondent left for work early and came home late, and seldom ate meals with the family, and spent little time with them except that he took the six children out of the home on weekends. Respondent and the children left the Geisinger home feeling that they needed to have a home of their own, and wanted to go back to the home. Mrs. Geisinger testified that the farm home was very unsanitary—the stool not flushed, and molded food in the refrigerator. The children would not respond to discipline "unless they know that you absolutely are going to use the rod, they will not obey, * * *." The smallest child acted as though he needed love very much.

Respondent testified that at the time of the hearing he and the children resided with his parents at 5325 Northeast 60th Terrace, Kansas City, Missouri. The house there, on six-tenths of an acre, had three bedrooms, living room, a combined dining room and kitchen, and an enclosed utility room on the back. The house had 1,308 square feet, with an additional 425 square feet in the basement, where the laundry facilities were and which could have been used for additional living area. The nine persons in the house slept in these areas: Respondent and the two younger boys slept in one bedroom; his parents have another bedroom; and the other four children occupied two beds in the other bedroom. Later, respondent intended to get a house of his own. He enrolled the children in a private Christian Day School. He had a new job, with shorter hours and more time off. When he was working he made arrangements for the care of one child who was not in school, and for the others when they came home with a lady next door until he arrived home. He had Tuesdays and Sundays off. He had been having dental work done for the children, and the six-year-old had been supplied with glasses. He had been taking the children regularly to church. He testified that the children have very good discipline. He earned a net of about $180.00 or $185.00 per week as a butcher.

Respondent's mother testified that it was a pleasure to have the children, and that they might continue to remain there. If the children stayed with them, some different arrangements were going to be made —the girls were going to have a bedroom, and respondent and the boys would share another. The children are well-behaved and mind her well, with no trouble whatsoever.

Mrs. Mary Templeton, 5321 Northeast 60th Terrace, Kansas City, Missouri, had been caring for the children since June, 1972. She observed that they were very well-behaved. She had no plans which would prohibit her continued care of the children if custody was left with respondent. Respondent paid her $30.00 every other week to care for the children.

Appellant's contention that the children had lived and been cared for in ten different places in the last nine months, is answered by the evidence that since June, 1972, they had been in respondent's parents' home, a stable environment, wherein they were not neglected and where they received love and affection. Respondent had acquired a new job to allow more time with the children. Respondent had utilized only four babysitters in the period of time, as the evidence shows. The children were in good physical condition, and their medi-

cal and dental needs were being provided by respondent as quickly as his financial means permitted. While appellant's condition has undoubtedly improved since her remarriage, so also has respondent's. There is here no "clear preponderance of the evidence" which would disclose a manifest abuse of discretion of the trial court in refusing to change the custody of these children to appellant. Pelts v. Pelts, 425 S.W. 2d 269, 270[4, 5] (Mo.App.1968). Although there may be some preferential right in a mother to have the custody of children of tender years, Eissler v. Eissler, 468 S.W.2d 217, 222 (Mo.App.1971), that is by no means conclusive. See Leaton v. Leaton, 435 S.W. 2d 408, 412[3, 4] (Mo.App.1968), and cases cited and quoted. The welfare of the children is the pivotal point, and here, according to the trial court great deference in determining that issue, with due regard for its greater opportunity to evaluate the testimony, there is no compelling reason to find that the exercise of that discretion was abused. Leaton v. Leaton, 435 S.W. 2d 408, 412[5, 6] (Mo.App.1968).

■ Appellant complains that the court considered these matters which were outside the record: First, the reputation and character of appellant's present husband. In this respect the court stated, "We have nothing concerning the character of her husband, and I presume it is good, but then it wasn't brought out anything about his character or reputation, except he says he has $100,000.00 in equity in property in Lawson, and over a period of time it may prove out that this may be the better situation—in the home of the plaintiff." This is hardly a comment on or consideration of matters outside the record. It is merely a noting that there was no evidence about appellant's present husband's character and reputation. Second, the court commented that appellant and respondent separated in December, the divorce was in February,

and she remarried in March; that "when a person is granted a divorce, they state that they have performed all the marital duties, a person performed all of them, but now I am led to think she was dating at that time, because within a month she got married, or just as quick as the month was up. Now, that to me, if she tells me she was performing all of her marital duties at that time, and still was dating at that time, that is not exactly a truthful statement." Appellant's petition, in which she alleged that she faithfully demeaned herself and discharged all her duties as respondent's wife, is in the record, although the divorce was granted to respondent on his cross-petition. The property settlement agreement stipulated that respondent was "a good father and a suitable person to have the care, custody and control of the minor children born of the marriage," and appellant agreed therein that he have the custody subject to her stipulated visitation rights. Although there was no direct evidence that appellant was dating her present husband prior to their marriage, considering the time interval, that is a legitimate inference for the court to have drawn. But be that as it may, the prime consideration was the respondent's fitness to have custody at the time of this hearing, which reduced to the issue would require evidence to show that his admitted suitability at the time of the divorce had deteriorated. There is no evidence that respondent was a less suitable person to have the custody. On the contrary, as noted, his ability to have and care for the children has been enhanced. In the difficult task of the trial court to award custody of the children in their best interest and welfare, the record does not show that its judgment is clearly erroneous. Rule 73.01(d); C. S. v. R. J. S., 488 S.W.2d 663, 666 (Mo.App.1972).

The judgment is affirmed.

All concur.