**In re Marriage of J__ H__ M__,**
**Petitioner-Appellant,**

**and**

**E__ C__ M__, Respondent.**

**Nos. 37801 and 37762.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Oct. 19, 1976.

Motion for Rehearing and for Transfer to Supreme Court Denied Dec. 20, 1976.

Dowd & Oates, Francis M. Oates, St. Louis, for petitioner-appellant.

Gunn & Gunn, Donald Gunn, Jr., St. Louis, for respondent.

RENDLEN, Judge.

This appeal is from the custody award of three minor children and denial of appellant's claim for maintenance incident to a judgment dissolving the parties' marriage. We affirm.

Considering first appellant's motion to strike respondent's brief for alleged inadequacies of the statement of fact and points relied on, we have examined respondent's brief and while it is less than model, we find it adequate and the motion is denied.

Appellant contends the custody award is erroneous because: (1) it does not serve the best interests of the children; (2) custody was awarded to the respondent-father as

punishment for the appellant-mother's conduct; (3) the father is not a fit custodian; (4) custody of the oldest child to respondent is not in her best interest because though respondent is the legal parent, he is not the natural father of the child; (5) the two oldest children stated their preference to live with the mother and minor children especially girls should normally be awarded to the custody of the mother; and (6) appellant's adulterous relationships were not shown to have produced a harmful effect on the children.

In this nonjury case the judgment of the trial court will be sustained unless there is no substantial evidence to support it or is against the weight of the evidence or erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32[1] (Mo. banc 1976), and we set aside a decree as against the weight of the evidence only "with a firm belief that the decree . . is wrong," *Murphy v. Carron, supra* at 32[2]; "giving deference to the trial court's findings and its ability to have judged the credibility of the witnesses," *L.H.Y. v. J.M.Y.*, 535 S.W.2d 304, 305–6[1] (Mo.App. 1976).

The parties were married on September 19, 1962, and have three daughters, D_ A_ age 13, D_ L_ age 11, and D_ G_ age 6. They separated October 25, 1974, and three days later appellant filed this suit, rented a U-haul, "packed everything up" and took the children to New Lenox, Illinois, about forty-five miles south of Chicago. Shortly thereafter respondent moved for an order directing appellant to return the children, money and property, alleging appellant left the state with the minor children, stripped the home of furniture and approximately $5,000 cash.

On December 13 of that year, appellant was ordered to bring the three minor children "to the jurisdiction of Missouri" and return $2,500 cash to the joint control of the parties. Appellant, who had filed her motion for allowances pendente lite, was awarded the right to reside in the family home during the pendency of the action and was allowed to retain custody of the children subject to respondent's "temporary custody of three children at reasonable times and alternating weekends from 6 p. m. Friday to 6 p. m. Sunday and during Christmas week from 4 p. m. Christmas Day to 4 p. m. New Years Day."

■ Respondent next filed a motion for contempt charging appellant "willfully failed and refused" to return the children to Missouri, notwithstanding the fact respondent, complying with the court's order had moved from the family home making it available to appellant. On March 14 the respondent filed a second motion for contempt, following appellant's willful frustration of his rights of visitation and temporary custody. This motion was sustained April 4, 1975, directing appellant's compliance with the temporary custodial order. At the conclusion of trial, judgment was entered awarding respondent custody of the children and the family home,[1] providing a proper environment for the children. It is generally recognized a mother is deemed best suited to care for a child of tender years, *Johnson v. Johnson*, 526 S.W.2d 33, 37[7] (Mo.App.1975), and this is "not a presumption of law but a recognized fact of life based on human experience," *McCallister v. McCallister*, 455 S.W.2d 31, 34[2] (Mo. App.1970). However, this attitude is not inflexible and courts are not reluctant to entrust custody to the father when the best interests of the children will be served thereby. *Suddarth v. Suddarth*, 515 S.W.2d 817, 820[3] (Mo.App.1974); *Leaton v. Leaton*, 435 S.W.2d 408, 412[4] (Mo.App.1968). Where the evidence does not preponderate in favor of either party, "the trial court is vested with broad discretion in awarding custody . . ." *Johnson v. Johnson, supra* at 37[7].

Significant factors which led to the court's custody award include the following:

---

1. This award was subject to respondent's payment of one-half of the value of the home (less 6% for commission purposes) to appellant.

■ Appellant entered into a continuing open adulterous relationship with one K— K—.[2] At trial appellant admitted having sexual intercourse with K— K— at his home and hers while the children were present in each place. The two older daughters stated they were aware their mother was sleeping with K— K— and lamentably have been somehow convinced this is acceptable conduct. The eldest daughter, D— A—, testified:

Q. "Where does K.K. sleep when he speeds weekends [with your mother]?"

A. "Sometimes with my mother."

Q. "Do you have any feelings about that?"

A. "No. Because I know they are just friends and she don't really like him that much."

Q. "Does she discuss with you things about sleeping with men friends?"

A. "No."

Q. "Do you think that is all right?"

A. "Yes. Because they have known each other for a long time."

The 11 year old D— L— testified:

Q. "Where did you go see him [K.K.] . . . ?"

A. "At his house."

.    .    .    .    .

Q. "How much did you stay overnight?"

A. "Maybe two times a week."

.    .    .    .    .

Q. "Where did your mom sleep?"

A. "In his [K.K.'s] bedroom."

Q. "Are you sure of that?"

A. "Yes."

Q. "Do you think that is all right?"

A. "Yes. I guess."

Adultery is usually insufficient, without more, to stigmatize a mother an unfit custodian, as the principal relevancy of such activity is its effect upon the child. *In re Marriage of Cook*, 532 S.W.2d 833, 837[9] (Mo.App.1975); *Klaus v. Klaus*, 509 S.W.2d 479, 481[9] (Mo.App.1974). What we may not condone is exposing the children to adulterous and immoral contacts. This is not to say that moral considerations are not factors in awarding custody, *V.M. v. L.M.*, 526 S.W.2d 947, 949–50[6] (Mo.App.1975); *M.L. v. M.R.*, 407 S.W.2d 600, 602[1] (Mo. App.1966), but critical here is that the mother's affairs were conducted with the children's knowledge and while they were present in the house.

Another factor weighing heavily in favor of the trial court's decree was the mother's attempt to poison the children's minds toward the father. Although the eldest daughter was apparently not respondent's natural child, as appellant was pregnant at the time of marriage, respondent did marry her, knowing of the pregnancy, and raised the child as his own. It is regrettable his chivalrous act was so basely repaid some twelve years later. Respondent gave the child his love and his name, established a home and raised her as his daughter; yet appellant admitted that following the separation she told the child respondent was not her natural father.[3] Notwithstanding her attempts to justify having so done, there can be little doubt and the record abundantly reveals the mother's action had a damaging effect upon the father-daughter relationship to say nothing of the emotional effect on the child.

Asked by the court why she had done this, appellant responded as follows:

THE COURT: "Yet you are telling this Court that you have decided to tell this child a year after he has been her father for 12 years it was in her best interest to tell her he was not the father. Was that your motive or motives, just what was your motive when you told her that?"

A. "My motive right after we got married to have this understanding we would tell her as a young child. He always told me, 'No'; so, when I did leave Ed I considered it may be more understanding

---

**2.** In 1972 appellant's extramarital involvement with K— K— led to a separation of the parties for about one month during that year.

**3.** Nothing in the trial court's decree nor this opinion is meant to suggest that respondent is other than the lawful father of the child.

with her and me about the problem that had occurred."

She was willing to take respondent as her husband, have him raise the child and assume the role of father; but contrary to his wishes when the separation occurred, she told the child these things which she must have known would affect the child's attitude toward the father. Yet when it came time to ask for money appellant made clear her willingness that respondent should provide support.

Q. "Are you asking this Court to order support for that child? Order your husband to pay support for that child?"

A. [Appellant] "He says he cares for her."

Q. "He has no legal obligation in your judgment?"

A. [Appellant] "He is her legal father."

Q. "He is?"

A. [Appellant] "Under law he is."

The damaging effect on respondent's relationship to his children became apparent in the marked change in their attitudes following the separation. In his words: "We got along well and since then [the separation] there has been drastic change. They are, I don't know how to put it, they have no respect to duty or family or anything else." He described the home relationship prior to the separation, explaining the children were assigned simple chores from time to time and the family seemed to do well as a unit. The children were paid allowances and disciplined if they failed to do their chores by restricting their "T.V." time "or something like that." The children responded well to this discipline.

The testimony as to the treatment of the children differs in that appellant contends respondent was cold and indifferent toward the children, respondent testified he treated them with affection. In this regard neither was shown unfit.

On some occasions respondent brought police officers with him to maintain the peace when he attempted to exercise his visitation rights because appellant had previously made it difficult for him. On one instance he presented a copy of the court's order stemming from the contempt proceeding when seeking to exercise his visitation rights. When asked of this appellant's disdain for the court's judgment appears:

Q. "Were there any number of incidents where Mr. M_ had to bring the police over to the house?"

A. [Appellant] "There wasn't a number. There was once or twice he brought them over with his *little court order*." (Emphasis ours.)

In one instance the wife called police when respondent came to pick up the children, accusing him of "breaking and entering," although it appears that no formal charges were made.

Change in the father-child relation manifested itself when respondent attempted to exercise his visitation rights prior to trial and the children became upset. He asked the girls the reason for this and they stated their mother had said he "threatened her life, . . . damaged her car and flattened her tires, . . . wouldn't pay the gas bills, . . . stole the furniture out of the house to take in money . . ."

Conduct of one parent which seeks to instill disrespect or destroy affection of the children for the other parent is strongly condemned and may be grounds for denying custody. *P.D. v. C.S.*, 394 S.W.2d 437, 445[10] (Mo.App.1965); *S. v. G.*, 298 S.W.2d 67, 76[12–13] (Mo.App.1957). The conduct of a parent which interferes with the other's custody rights is also grounds for denial of or change in custody, because such orders are designed to serve the children's best interests. *AsBell v. AsBell*, 430 S.W.2d 436, 439[9] (Mo.App.1968); *P.D. v. C.S., supra* at 445[11, 12]; *S. v. G., supra* at 76[11].

We do not find that the trial court awarded custody to the father in order to punish appellant nor do we find that his custody award was an abuse of discretion requiring reversal. In our review we presume the trial court thoroughly weighed all the evidence and decreed custody as it believed would be in the children's best interests. *L.H.Y. v. J.M.Y., supra* at 306[3]; *Brand v. Brand*, 534 S.W.2d 628, 632[7] (Mo. App.1976).

The father testified of his talks with the children whenever possible during the separation. He discussed with them their problems, school work, their interests and similar matters. The husband's custodial plan was for his mother or sister to come and live with him in the family home. Appellant challenged respondent's parental fitness, accusing him of striking the girls, making improper embarrassing remarks to them and acts of racial bias. Respondent denied some of these allegations, and as to the others about which he was not questioned, we bear in mind the trial court's superior opportunity to judge the credibility and sincerity of the witnesses and to observe intangibles which may not be completely revealed by the record. E.(S.) v. E., 507 S.W.2d 681, 684[4] (Mo.App.1974); *L.H.Y. v. J.M.Y., supra* at 306[3]; *Johnson v. Johnson, supra* at 37[6]. In this case, tried without a jury, fact issues upon which no specific findings are made are deemed found in accordance with the result reached. § 510.310(2) RSMo 1969, V.A.M.S. Appellant's contention as to the custody award is denied.

■ Appellant next contends the trial court erred in denying maintenance "because the undisputed evidence established that she is 40 years old, unemployed, with no income and has no independent resources, while respondent was employed with a substantial income."

Section 452.335 provides "the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance (1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) Is unable to support himself through appropriate employment . . . ."

Here appellant was awarded one-half the equity in the home and the only evidence of value placed the house at $35,000 with a mortgage indebtedness of $10,000. From this the court could conclude her one-half of the equity was approximately $12,500. Further appellant had work experience as a bank employee, clerk in a Venture Store and as a waitress. Appellant wasn't employed at the time of trial because she had to "take care of the children." She is no longer charged with this responsibility and may seek employment. If as appellant stated her expenses for the children had been $665 per month, that burden now falls on respondent. Respondent's "take home pay" is $170 per week, which represents $736 per month.[4] Additionally, the court as a relevant factor under § 452.335–2(7) must consider the "conduct of the party seeking maintenance during the marriage." In light of these facts, we find no error in the court's denial of maintenance. The point is ruled against appellant.

Following entry of judgment appellant obtained new counsel who promptly moved for new trial setting forth facts relative to respondent's alleged unfitness as custodian and offering as evidence the child study report prepared by the social worker prior to trial. The proffered testimony consisted of evidence available at the time of trial or pertained to events occurring after trial and was therefore not relevant. The motion was overruled.[5]

■ The trial court has broad discretion in granting a new trial "as to questions of fact and matters affecting the determination of issues of fact." *Berger v. Podolsky Bros.*, 360 Mo. 239, 227 S.W.2d 695, 697[2] (1950); *Coonis v. City of Springfield*, 319 S.W.2d 523, 528[10] (Mo.1958).

4. Appellant testified respondent had extra income from automobile repair work and from sign painting, a new trade he was learning. However, there is no indication in the testimony as to the possible amounts or regularity of such income.

5. The record discloses the judgment was entered on December 15, 1975, and appellant's motion for new trial filed December 26. The date of entry for the order overruling the motion for new trial is not shown but this is followed by appellant's first notice of appeal on January 13 and we conclude the order overruling the motion for new trial was in fact entered prior to January 13.

■ Appellant's original counsel had the opportunity to introduce this evidence and the fact appellant now prefers a different strategy does not require admission of the evidence by the trial court. This was not "newly discovered evidence," and we find no abuse of discretion in the trial court's action. *See Bruce v. Spillman*, 497 S.W.2d 196, 200[2, 3, 4] (Mo.App.1973); *Young v. St. Louis Public Service Co.*, 326 S.W.2d 107, 113[7] (Mo.1959); *Koenig v. Skaggs*, 400 S.W.2d 63, 68[7, 8] (Mo.1966).

After the motion for new trial was overruled and after the notice of appeal had been filed, appellant filed a second motion delineated "motion for modification of judgment" on January 15, 1976. No ruling appears to have been made on this motion and appellant filed a second notice of appeal on the 20th day of January, 1976. Appellant contends the trial court abused its discretion "in refusing to permit [appellant] to present the evidence mentioned . . . in her motion under Rule 75.01 . . . because [the motion was] in the nature of a request for leave to reopen the case for presentation of further evidence . . ." As we have noted, appellant's original motion for new trial was overruled prior to January 13 and the judgment became final at that time. Rule 81.05, V.A.M.R. Appellant then filed its timely notice of appeal and the trial court had no further authority to entertain the motion filed January 15, 1976, more than thirty days after entry of the judgment. Appellant suggests the court had continuing jurisdiction under Rule 75.01, V.A.M.R., for thirty days after entry of judgment but this has no application as the motion was filed on the 31st day. Rule 44.01(a). The point is denied.

The judgment is affirmed.

WEIER, P. J., and McMILLIAN, J., concur.